[Crim. No. 2504.   Fourth Dist., Div. Two.   July 5, 1966.]

THE PEOPLE, Plaintiff and Appellant, v. JAMES M. JENNINGS et al., Defendants and Respondents.

*Assigned by the Chairman of the Judicial Council.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Kenneth Williams, District Attorney, and Robert E. Law, Deputy District Attorney, for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

KERRIGAN, J.—The People appeal from an order setting aside and dismissing count I of an information charging the defendants with the crime of murder (Pen. Code, § 187). The defendants were also charged with the crimes of arson (Pen. Code, § 447a) and conspiracy to commit arson (Pen. Code,

§ 182), but the arson and conspiracy counts are not involved in this appeal.

A review of the evidence, as contained in the transcript of the preliminary examination, indicates that the defendants James M. Jennings and Clarence Homer Hurst and one Arthur Clifford Bockstahler formed a partnership in April 1964 for the purpose of organizing and operating a rest home and rehabilitation center for post-cardiac patients. The copartners leased a motel operation known as Laguna Village Motel, Laguna Beach, California, for the purpose of converting it into a combination rest home-clinic for heart convalescents. Because some of the units were still leased to private tenants at the time the copartnership took over the operation of the motel, the conversion of the business into a medical center could not be immediately effected, although items of medical and clinical equipment were installed by the copartners in some of the apartments as vacancies occurred. Apartment No. 43, in September 1964, was equipped in the fashion of a doctor's office and contained two patients' examination tables, a desk, filing cabinets, an electro-cardiogram machine, a day bed, a medical supply cabinet, and other miscellaneous medical fixtures. Apartment No. 42 was adjacent to Apartment No. 43 and was occupied by a family whose lease had apparently not expired.

The members of the partnership took out insurance in the sum of $50,000 on the furniture, furnishings and equipment which they had purchased and installed in the various units of Laguna Village, and also secured fire coverage of $150,000-$200,000 on the permanent buildings and improvements.

On or about September 7, 1964, the three partners conspired to set fire to the premises for the purpose of collecting the insurance. An accomplice, Lester Gustav Jaeger, was employed to burn the premises, and the defendant Jennings paid Jaeger a certain sum of money on September 9, 1964, to commit arson. It was understood that the defendants Hurst and Jennings would be absent from Laguna Village during the early morning hours of September 10, 1964, when Jaeger ignited the premises. Bockstahler was to remain in his Apartment No. 47 while Jaeger was making the preparations to ignite the buildings.

Jaeger slept in Bockstahler's apartment until 3-3:30 a.m., whereupon he arose and left the apartment for an hour. During this period of time he poured gasoline on the floor and walls of Apartment No. 43 and also splattered some on the ceiling of said unit. Traces of gasoline were later discovered in

eight other vacant apartments located in the Village area. He returned to Bockstahler's apartment and advised that he had spilled some ''juice'' (gasoline) on his shirt, and was admonished to be careful. After leaving Bockstahler, Jaeger returned to Apartment No. 43 and negligently ignited the gasoline, resulting in a flash fire. He was horribly burned in the process, struggled outside, rolled on the ground to extinguish the flames on his clothing, and found his way back to Bockstahler's apartment. Bockstahler noted the serious burns, furnished Jaeger with a double shot of whiskey at the latter's request, observed the secretion of fluid from the burned areas of Jaeger's torso, and prepared a cold bath in which Jaeger immersed after being undressed by Bockstahler.

In the interim, the fire department had arrived and extinguished the blaze in Apartment No. 43, and the police began an investigation. Jaeger was experiencing excruciating pain and Bockstahler transported him to the Veterans Administration Hospital at Long Beach for care and treatment. Subsequently Jaeger died, after making a dying declaration to police authorities in which he confessed to the crime and admitted that he had been employed by the three partners to commit arson for insurance purposes. These criminal proceedings were then initiated against two of the three partners. Bockstahler testified on behalf of the prosecution.

The issue to be determined is whether conspirators engaged in a plot to commit arson may be charged with murder of an accomplice who accidentally burns himself to death.

''Murder is the unlawful killing of a human being with malice aforethought.'' (Pen. Code, § 187.)

''All murder . . . which is committed in the perpetration . . . (of) arson, rape, robbery, burglary, mayhem . . . is murder of the first degree; and all other kinds of murder are of the second degree.'' (Pen. Code, § 189.)

An essential element of murder, except when the common law felony-murder doctrine is applicable, is an intent to kill or an intent with conscious disregard of life to commit acts likely to kill. (*People* v. *Washington*, 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130].) The felony-murder doctrine imputes malice aforethought to the felon who kills another in the commission of one of the felonies enumerated in Penal Code, section 189. (*People* v. *Washington, supra.*

Malice aforethought may not be implied under Penal Code, section 189, to make a killing murder, unless the defendant or his accomplice commits the killing in the perpe-

tration of an inherently dangerous felony. (*People* v. *Gilbert*, 63 Cal.2d 690, 705 [47 Cal.Rptr. 909, 408 P.2d 365].) ■ Thus, unintentional killings are first degree murders when committed by felons while perpetrating any of the crimes denounced in the said section. (*People* v. *Coefield*, 37 Cal.2d 865 [236 P.2d 570].) ■ If the unlawful killing occurs in the perpetration of one of the serious felonies listed in Penal Code, section 189, it is first degree murder. (*People* v. *Pulley*, 225 Cal.App.2d 366 [37 Cal.Rptr. 376].) ■ The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they may commit. The felony-murder rule has been criticized upon the grounds that in almost all cases in which it is applied it erodes the relation between criminal liability and moral culpability. (*People* v. *Washington, supra*, 62 Cal.2d 777.) [See 30 So.Cal.L.Rev. 357; 71 Harv. L.Rev. 1565.] Nevertheless, it is the law of this state, as defined in Penal Code, section 189, but should not be extended beyond any rational function that it is designed to serve. (*People* v. *Washington, supra.*) ■ The felony-murder doctrine was enacted for protection of the community and its residents, not for the benefit of the lawbreaker, and obviates rather than requires necessity of technical inquiry as to whether there has been completion, abandonment, or desistance of the felony before homicide was completed. (*People* v. *Chavez*, 37 Cal.2d 656, 669 [234 P.2d 632].)

In *People* v. *Washington, supra*, 62 Cal.2d 777, the Supreme Court of California recently held in a factual situation where a defendant and his accomplice were in the act of robbing a gas station and the victim resisted and killed the defendant's accomplice, that the defendant could not be held responsible for the death of the accomplice. The court based its ruling on the principle that the act of killing must be committed by the defendant or by his accomplice acting in furtherance of their common design. (See *People* v. *Gilbert, supra*, 63 Cal.2d 690.)

In *People* v. *Ferlin*, 203 Cal. 587 [265 P. 230], a case which is almost identical with the factual situation presented herein, the defendant retained "X" to set fire to certain commercial property owned by defendant for the purpose of collecting the insurance proceeds on the premises. "X" was reluctant to proceed with the arson plot and retained "Y" to set the fire. Defendant purchased the gasoline. "Y" was careless in igniting the inflammatory substance and caused an explosion. The third-degree burns sustained in the holocaust resulted in his death. The California Supreme Court held that when an accom-

plice in a conspiracy to commit arson for the purpose of collecting insurance is accidentally burned to death, his coconspirators cannot be charged with his murder inasmuch as the death was not in furtherance of the conspiracy but was entirely opposed to it, and that under such circumstances, it could not be said that the defendant and the deceased had a common design that the deceased should accidentally kill himself. Further, the Supreme Court noted that it could not be seriously contended that one accidentally killing himself while engaged in the commission of a felony could be charged with murder, and that if the deceased coconspirator was not guilty of murder, then his accomplice could likewise not be guilty of the crime.[1]

Likewise, in *Woodruff* v. *Superior Court,* 237 Cal.App.2d 749 [47 Cal.Rptr. 291], the Second District Court of Appeal granted an accused's petition for writ of prohibition to restrain further proceedings in a criminal prosecution for murder under circumstances bearing a startling resemblance to the facts involved in the case now under review. The accused was the owner of a cafe which had been operating at a financial loss and which was insured against loss by fire. A fire of incendiary origin occurred in the cafe at a time when the accused was not present. Defendant purchased the inflammable liquid utilized in setting the fire, and hired a friend to start the fire with the purchased gasoline. The friend inadvertently set himself afire during the commission of the crime and sustained fatal burns. The court held that *People* v. *Ferlin, supra,* 203 Cal. 587, constituted valid authority for the proposition that Penal Code, section 189, is inapplicable to a situation where an accomplice accidentally kills himself while engaged in the act of arson.

We hold that it is not murder for an accomplice to kill himself accidentally while engaged in the commission of the crime of arson, and consequently his principal may not be charged with such offense inasmuch as the act of accidentally killing one's self does not constitute an "unlawful killing" within the meaning of Penal Code, section 187, particularly in view of the rule that the felony-murder doctrine was enacted for the protection of the public, and not for the benefit of the lawbreaker.

Order affirmed.

McCabe, P. J., and Tamura, J., concurred.

[1]The Supreme Court cited the *Ferlin* case with approval in its recent decision in the case of *People* v. *Washington,* 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130].