[Crim. No. 7614. Third Dist. Apr. 2, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHNNY RAY EARNEST, Defendant and Respondent.

**COUNSEL**

C. Robert Jameson, District Attorney, for Plaintiff and Appellant.

Harry A. Ackley, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**JANES, J.**—Defendant was charged by indictment with the murder of Ruben Enrique Munoz and with arson. The superior court denied defendant's motion to set aside the indictment as to the arson count but granted the motion as to the murder count.[1] The People appeal from the order granting defendant's motion to dismiss the murder charge.

### SUMMARY OF THE EVIDENCE

The transcript of the proceedings before the grand jury shows a conspiracy between Munoz and defendant to burn defendant's house for

[1]The case proceeded to trial on the arson count and defendant was convicted on that count by a jury.

the insurance proceeds. Defendant solicited the 15-year-old Munoz to burn the house; Munoz was to receive $100 from defendant for the task. The plan was for defendant to turn on the natural gas inside the house, close the windows, push in a back window to simulate an attempted break-in, and leave a can of gasoline on the porch. Munoz was to spread the gasoline around the outside of the house and ignite it. On July 7, 1973, Munoz, acting alone, attempted to set fire to the then unoccupied home, an explosion occurred and Munoz was killed. The fatal fire was observed by Steven Fernandez, a cousin of Munoz, who had driven Munoz to the scene. On the way to defendant's house, Munoz told Fernandez, "I'm going to burn this guy's house down."

The house, in which defendant lived with his wife and child, was held in the name of his wife's grandmother, but defendant actually owned the property and was making payments on it. When the insurance proceeds were paid after the fire, the grandmother paid them over to defendant.

## The Law

█ It is settled California law that where, as here, an accomplice in a conspiracy to commit arson for the purpose of defrauding an insurer accidentally burns himself to death, his co-conspirator may not be charged with murder under the felony-murder rule. (*People* v. *Ferlin* (1928) 203 Cal. 587, 595-597 [265 P. 230]; *Woodruff* v. *Superior Court* (1965) 237 Cal.App.2d 749, 750-752 [47 Cal.Rptr. 291]; *People* v. *Jennings* (1966) 243 Cal.App.2d 324, 328-329 [52 Cal.Rptr. 329].) The last cited of these cases, *People* v. *Jennings, supra,* points out that the co-conspirator or accomplice's act of accidentally killing himself does not constitute an "unlawful killing" within the meaning of section 187 of the Penal Code. (243 Cal.App.2d at p. 329.)

█ The theory upon which the People seek to uphold the murder count has its origin in the case of *People* v. *Harrison* (1959) 176 Cal.App.2d 330, 335 [1 Cal.Rptr. 414], where it was held, after extensive analysis of the legal principles involved, that co-conspirators in a robbery could be tried for and convicted of murder where the deceased, a victim of the crime, had been killed by another victim of the crime. There the death occurred during a gun battle initiated by the defendants. The court in *Harrison* based its conclusion on the applicability of the doctrine of proximate cause in criminal proceedings, stating " . . . that where it reasonably might or should have been foreseen by the accused that the commission of or the attempt to commit the contemplated felony would

be likely to create a situation which would expose another to the danger of death at the hands of a nonparticipant in the felony, the creation of such situation is the proximate cause of the death; and that the killing is murder of the first degree committed by the accused." (176 Cal.App.2d at p. 345.)

The People characterize *Harrison* as acknowledging and acceding to the rule of the early cases that felony murder does not lie in regard to a killing by a victim of a crime, but holding a charge of murder proper on the theory that a defendant is liable for the foreseeable consequences of his dangerous act. In accepting the thesis that *Harrison* is not a felony-murder case, the People emphasize that the court did not say that the killing which occurred was murder *because* it was committed in the perpetration of an attempted robbery but simply that it was murder *and* it was so committed. It is argued that this distinction "became the genesis of a new kind of murder."

In the case of *People* v. *Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130], the Supreme Court reversed a murder conviction based upon the killing, by a victim, of defendant's co-conspirator during their perpetration of a robbery. The court in *Washington* discussed the nature and purpose of the felony-murder rule and held it inapplicable to killings committed by other than the felons involved in the crime itself. The court noted, however, that one could be guilty of murder on the basis of vicarious responsibility under the rules defining principals and conspiracies and further—and more importantly for our purposes—that "when the defendant intends to kill or intentionally commits acts that are likely to kill with a conscious disregard for life, he is guilty of murder even though he uses another person to accomplish his objective." (P. 782.) As an example of such acts, the court included the initiation of gun battles, stating that defendants who so act may be found guilty of murder if their victims resist and kill. "Under such circumstances, 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' (*People* v. *Thomas*, 41 Cal.2d 470, 480 [261 P.2d 1] [concurring opinion]), and it is unnecessary to imply malice by invoking the felony-murder doctrine. To [do so] . . . overlooks the principles of criminal liability that should govern the responsibility of one person for a killing committed by another. [Citations.]" (62 Cal.2d at p. 782.)

Later in 1965, in *People* v. *Gilbert*, 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365], the court applied the rules enunciated in *Washington*, *supra*, to reverse the murder conviction of two defendants for the death of their

accomplice during an attempted escape from the scene of the crime. The court, summarizing its earlier holding in *Washington,* stated "that since the purpose of the common-law felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit, malice aforethought cannot be imputed under that rule unless a felon commits the killing. We recognized, however, that entirely apart from the felony-murder rule, malice may be established when a defendant initiates a gun battle, and that under such circumstances he may be convicted of murder for a killing committed by another." (63 Cal.2d at p. 703.)[2]

Application of the principles enunciated in *Gilbert* to the facts of the case at bench takes us full circle, however, back to *People* v. *Ferlin, supra,* 203 Cal. 587. The third principle of *Gilbert* (see fn. 2, *supra*) requires that "the accomplice must cause the death of another human being by an act committed in furtherance of the common design." *Ferlin,* and the cases which follow it, clearly express the rule that the accomplice's accidental self-destruction is not in furtherance of the common design. It is not the fact that the accomplice killed himself that precludes application of the theory of vicarious responsibility, but the fact that his was the sole

---

[2]The court in *Gilbert, supra,* noting that the application of the principles of criminal liability for a killing committed by another might arise upon retrial, defined that liability in terms of the following principles which could "be invoked to convict a defendant of first degree murder for [such a killing].

"(1) *Proof of malice aforethought.* . . . . Such malice is implied under Penal Code section 188 when the defendant or his accomplice ' "for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death." ' [Citations.] Initiating a gun battle is such an act.

"(2) *The killing must be attributable to the act of the defendant or his accomplice.* When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.

"Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice. [Citations.]"

"(3) *Vicarious criminal liability.* Under the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design. [Citations.]

"(4) *The application of Penal Code section 189.* When murder is established under Penal Code sections 187 and 188 pursuant to the principles defined above, section 189 may properly be invoked to determine the degree of that murder. . . ." (63 Cal.2d at pp. 704-705.)

human agency involved in his death. That this is the case appears from a careful reading of *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578 [91 Cal.Rptr. 275, 477 P.2d 131], the final authority upon which the People rely in support of their position on appeal.

Taylor and his codefendant Daniels were charged (1) with the murder of their co-conspirator, John Smith, (2) with robbery and assault with a deadly weapon against Mrs. Linda West and (3) with assault with a deadly weapon against her husband, Jack West. The superior court had denied petitioner Taylor's motion to set aside the information as to the murder count and the Supreme Court issued an alternative. writ of prohibition. Smith and codefendant Daniels had entered a liquor store owned and operated by the Wests and ordered Mr. West, who was at the counter, to put the money from the register in a bag. While Mr. West was complying, defendant Daniels repeatedly threatened the Wests with deadly harm and repeatedly told them that Smith was armed with a gun. As Mr. West was being forced to the floor after turning over the money, Mrs. West drew a pistol and fired at Smith, striking him; she fired several more times; her husband fired a gun he had obtained. Smith, who returned the fire, died as a result of multiple gunshot wounds. Taylor, later apprehended, had been waiting outside with the getaway car.

In *Taylor,* the Supreme Court held that petitioner and his codefendant could properly be tried for murder under the vicarious responsibility theory enunciated in the earlier cases of *People* v. *Washington, supra,* 62 Cal.2d 777, 780 and *People* v. *Gilbert, supra,* 63 Cal.2d 690, 704-705. The dangerous acts which were held sufficient to support a murder charge were those "acts of provocation on the part of Daniels and Smith from which the trier of facts could infer malice, including Daniels' coercive conduct towards Mr. West and his repeated threats of 'execution,' and Smith's intent and nervous apprehension as he held Mr. West at gunpoint. The foregoing conduct was sufficiently provocative of lethal resistance to lead a man of ordinary caution and prudence to conclude that Daniels and Smith 'initiated' the gun battle, or that such conduct was done with conscious disregard for human life and with natural consequences dangerous to life" (3 Cal.3d at p. 584). As a footnote to the quoted statement, the court made the following comment, which is apposite here:

"Petitioner contends that we should ignore evidence regarding Smith's conduct, on the theory that Smith could not have been held responsible for his own death. We rejected a similar contention in *Washington,* stating that 'A distinction based on the person killed, however, would

make the defendant's criminal liability turn upon the markmanship of victims and policemen. A rule of law cannot reasonably be based on such a fortuitous circumstance. The basic issue therefore is whether a robber can be convicted of murder for the killing of *any* person by another who is resisting the robbery.' [Citation.] Therefore, the trier of fact may find that Smith set into motion, through the intentional commission of acts constituting implied malice and in furtherance of the robbery, a gun battle resulting in his own death. Since petitioner may be held vicariously responsible for *any* killing legally attributable to his accomplices, he may be charged with Smith's death. [Original italics.]

"The cases of *People* v. *Ferlin,* 203 Cal. 587, 597 [265 P. 230], *Woodruff* v. *Superior Court,* 237 Cal.App.2d 749, 750-751 [47 Cal.Rptr. 291], and *People* v. *Jennings,* 243 Cal.App.2d 324, 328-329 [52 Cal.Rptr. 329], are not apposite for they simply held that an accomplice cannot be charged with murder *when his confederate accidentally kills himself while committing a felony.* The courts in those cases were not faced with a situation involving the intentional commission of acts provoking lethal resistance by victims or police officers." (*Id.* at pp. 584-585.) (Italics added.)

In the case at bench, the trial court properly read *Taylor* as limiting the scope of the vicarious responsibility rule only to those circumstances in which the death occurred as the result of an intervening force or action set in motion by a co-conspirator or accomplice, irrespective of the fact that the co-conspirator or accomplice may have been the person killed. The trial court rejected enlargement of this interpretation to allow imposition of a murder charge where there is no such intervention but where the death results from a combination of unforeseeable forces. In making its ruling, the court noted the apparent applicability of the theory in the logical sense, but declined to go beyond the limits it found expressed in *Taylor.* We are similarly bound. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The order setting aside Count I of the information is affirmed.

Friedman, Acting P. J., and Paras, J., concurred.