Opinion
CHIN, J.
Defendant conspired with two others to commit arson of his truck for purposes of insurance fraud. All three conspirators were present at the scene of the burning. While committing the arson, one of the conspirators caught fire and burned to death. We must decide whether defendant is guilty of murdering that coconspirator under the felony-murder rule. We conclude, as did the Court of Appeal, that the felony-murder rule applies to all arsonists at the scene of the arson. In so doing, we distinguish People v. Ferlin (1928) 203 Cal. 587 [265 P. 230] (Ferlin), which held that the rule does not apply to a conspirator who was never at the scene. We leave for another day the question whether Ferlin was correctly decided on its facts.
I. THE FACTS
The prosecution presented evidence from which the jury could reasonably find the following. Defendant purchased a truck and insured it for physical damage. On August 26, 1997, defendant and two others, including Manoj Bhardwaj, drove from Yuba City towards Sacramento, with defendant and Bhardwaj in defendant’s truck and the third person following in a car. They intended to bum defendant’s track and obtain the insurance proceeds. Near Wheatland, defendant drove his truck onto a gravel road and stopped about two-tenths of a mile down the road around a bend. There the three set the truck on fire, using either kerosene or diesel fuel.
During these events, Bhardwaj’s clothing somehow became saturated with the fuel. It is not clear exactly what happened, but evidence suggested he might have held a leaky canister of the fuel on his lap during the drive. While the three were setting the truck on fire, Bhardwaj’s clothing caught fire, and he was severely burned. He died later of his injuries.
A jury convicted defendant of the second degree murder of Bhardwaj (Pen. Code, §§187, 189),[1] arson causing great bodily injury (§ 451, subd. (a)), and making a false or fraudulent insurance claim (§ 550, subd. (a)(4)). The trial court had instructed the jury solely on the felony-murder rule as a basis for finding defendant guilty of murder. The Court of Appeal modified the judgment and affirmed it as modified. It held that defendant was properly convicted of Bhardwaj’s murder under the felony-murder rule. We granted *1068 defendant’s petition for review to decide whether the felony-murder rule applies on these facts.
II. DISCUSSION
“All murder . . . which is committed in the perpetration of, or attempt to perpetrate, [specified felonies, including arson] ... is murder of the first degree.” (§ 189.)[2] This felony-murder rule covers “a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident . . . .” (People v. Dillon (1983) 34 Cal.3d 441, 477 [194 Cal.Rptr. 390, 668 P.2d 697].) We must decide whether it includes the unintended death of one of the perpetrators during the commission of arson.
Two overarching principles guide us. First, “we are not concerned here with the wisdom of the first degree felony-murder rule itself, or with the criticisms—and defenses—directed at it by judicial and academic commentators; section 189 is the law of California, and we are not free to ignore or alter it if we would.” (People v. Pulido (1997) 15 Cal.4th 713, 724 [63 Cal.Rptr.2d 625, 936 P.2d 1235].) Second, “[nevertheless, when the rule as ordained by the Legislature requires detailed delineation, this court properly considers policy and consistency. In particular, we have held the first degree felony-murder rule ‘should not be extended beyond any rational function that it is designed to serve.’ ” (Ibid., quoting People v. Washington (1965) 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130].)
Analysis of this question must begin with Ferlin, supra, 203 Cal. 587. In that case, the defendant hired Skala to commit arson and purchased gasoline used in the arson, but he apparently did not otherwise actively participate in the crime and was not present at the scene of the arson. Skala burned to death while committing the arson. (Id. at p. 590.) We held that the defendant was improperly convicted of felony murder. “It would not be seriously contended that one accidentally killing himself while engaged in the commission of a felony was guilty of murder. If the defendant herein is guilty of murder because of the accidental killing of his co-conspirator then it must follow that Skala was also guilty of murder, and if he had recovered from his burns that he would have been guilty of an attempt to commit murder.” (Id. at p. 596.) “It cannot be said from the record in the instant case that defendant and deceased had a common design that deceased should accidentally kill himself. Such an event was not in furtherance of the conspiracy, but entirely opposed to it.” (Id. at p. 597.)
*1069 Several Court of Appeal cases have followed Ferlin under similar facts. In Woodruff v. Superior Court (1965) 237 Cal.App.2d 749 [47 Cal.Rptr. 291], the defendant procured another to bum the defendant’s cafe but was not present at the actual burning. The other person died in the arson. (Id. at p. 750.) The court described the question as “whether a person who aids, counsels or procures another to maliciously set fire to a building, but who is not physically present at the scene of the arson, is guilty of murder when his confederate negligently or accidentally bums himself to death while setting the fire.” (Ibid.) It followed Ferlin in concluding the felony-murder mle did not apply. (Id. at pp. 750-752.) In People v. Jennings (1966) 243 Cal.App.2d 324 [52 Cal.Rptr. 329], three persons, including the defendants, hired another to bum a building for insurance purposes. That person caught fire himself while setting the fire and died later. (Id. at pp. 326-327.) The Court of Appeal also found no liability for felony murder. (Id. at pp. 327-329.)
In People v. Earnest (1975) 46 Cal.App.3d 792 [120 Cal.Rptr. 485], the defendant conspired with Munoz to bum the defendant’s house for the insurance proceeds. “Munoz, acting alone, attempted to set fire to the then unoccupied home, an explosion occurred and Munoz was killed.” (Id. at p. 794.) The court also found no felony-murder liability. “It is settled California law that where, as here, an accomplice in a conspiracy to commit arson for the purpose of defrauding an insurer accidentally bums himself to death, his co-conspirator[s] may not be charged with murder under the felony-murder mle.” (Ibid.) The court interpreted Ferlin and its progeny as “clearly expressing] the rale that the accomplice’s accidental self-destmction is not in furtherance of the common design. It is not the fact that the accomplice killed himself that precludes application of the theory of vicarious responsibility, but the fact that his was the sole human agency involved in his death.” (People v. Earnest, supra, at pp. 796-797.)
We have not confronted similar facts since Ferlin, supra, 203 Cal. 587, but we have cited that case a number of times. In the landmark decision of People v. Washington, supra, 62 Cal.2d 777, we held that the robbery felony-murder mle does not apply when someone other than a robber, such as the police or a victim, does the killing. We cited Ferlin for the proposition that “for a defendant to be guilty of murder under the felony-murder mle the act of killing must be committed by the defendant or by his accomplice acting in furtherance of their common design.” (People v. Washington, supra, at p. 783.) In People v. Antick (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], we held that one robber cannot be vicariously liable for the death of an accomplice due to the deceased robber’s actions because people cannot murder themselves. We discussed Ferlin and said its “holding was aptly explained by the Court of Appeal in Woodruff v. Superior Court (1965) 237 Cal.App.2d 749 [47 Cal.Rptr. 291]: ‘We believe the rationale of that decision to be that section 189 was inapplicable because there was no killing by the *1070 accused felon and no killing of another by one for whose conduct the accused was vicariously responsible. . . . [I]n Ferlin “the coconspirator killed himself while he alone was perpetrating the felony he conspired to commit” and “it was held in substance and effect that inasmuch as [the deceased] killed himself Ferlin could not be held criminally responsible for his death.” ’ (Id. at p. 751.)” (People v. Antick, supra, at p. 89.) More recently, we cited Ferlin for the proposition that to be guilty of murder for a killing attributable to the act of an accomplice, “the accomplice must cause the death of another human being by an act committed in furtherance of the common design.” (People v. Caldwell (1984) 36 Cal.3d 210, 217, fn. 2 [203 Cal.Rptr. 433, 681 P.2d 274].)
Defendant argues primarily that Ferlin, supra, 203 Cal. 587, and its progeny are on point here: Bhardwaj killed himself, and his death was not in furtherance of the conspiracy but entirely opposed to it. In deciding this question, we must consider the purpose behind the felony-murder rule, for we have said the rule should not be extended beyond its purpose. (People v. Pulido, supra, 15 Cal.4th at p. 724.) The rule’s primary purpose is “to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit.” (People v. Washington, supra, 62 Cal.2d at p. 781; accord, People v. Pulido, supra, 15 Cal.4th at p. 725; People v. Hansen (1994) 9 Cal.4th 300, 310 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) In Washington, we found this purpose not applicable when a third person kills a robber. “This purpose is not served by punishing [felons] for killings committed by their victims.” (People v. Washington, supra, at p. 781.) However, here no third person killed Bhardwaj. Making arsonists guilty of murder if anyone, including an accomplice, dies in the arson gives them an incentive to do whatever is necessary to make sure no one dies. Defendant argues that felons already have a natural incentive not to kill themselves or their accomplices while committing their crimes. To the extent this is so, making felons strictly liable for deaths maximizes this incentive, thus furthering the purpose of the felony-murder rule.
The felony-murder rule applies to the death of a cohort as much as to the death of an innocent person. (People v. Johnson (1972) 28 Cal.App.3d 653, 656-658 [104 Cal.Rptr. 807] [defendant’s gun discharged, apparently accidentally, killing an accomplice who was running towards one of the victims; felony-murder rule applies]; People v. Cabaltero (1939) 31 Cal.App.2d 52, 55-56 [87 P.2d 364] [one accomplice shot and killed another accomplice, apparently out of anger that that accomplice had fired his gun; felony-murder rule applies]; see also People v. Washington, supra, 62 Cal.2d at p. 780 [rejecting a distinction between the death of an accomplice and the death of an innocent person].)[3] Defendant cites language in People v. *1071 Jennings, supra, 243 Cal.App.2d at pages 328-329, that the felony-murder rule exists to protect the public, not to benefit lawbreakers. Jennings, in turn, cited People v. Chavez (1951) 37 Cal.2d 656, 669 [234 P.2d 632], where we said that section 189 “was adopted for the protection of the community and its residents, not for the benefit of the lawbreaker . . . .” But we said the felony-murder rule does not benefit lawbreakers in order to extend the rule; we did not suggest it fails to protect lawbreakers. (People v. Chavez, supra, at pp. 669-670.) One may have less sympathy for an arsonist who dies in the fire he is helping to set than for innocents who die in the same fire, but an accomplice’s participation in a felony does not make his life forfeit or compel society to give up all interest in his survival.
One rationale of Ferlin and its progeny is that the accomplice’s death “was not in furtherance of the conspiracy, but entirely opposed to it.” (Ferlin, supra, 203 Cal. at p. 597.) This reasoning is flawed.[4] The death of the accomplice in People v. Johnson, supra, 28 Cal.App.3d 653, and possibly also People v. Cabaltero, supra, 31 Cal.App.2d 52, was similarly not in furtherance of the conspiracy in the sense that the death harmed the conspiracy. Nevertheless, the courts found felony-murder liability in those cases. As the Attorney General argues, there is a difference between acts done in furtherance of the conspiracy and the results of those acts. We have said that the “act of killing” must be in furtherance of the conspiracy. (People v. Washington, supra, 62 Cal.2d at p. 783, italics added.)[5] But the result need not further the conspiracy. (See People v. Schader (1965) 62 Cal.2d 716, 731 [44 Cal. Rptr. 193, 401 P.2d 665] [the “death must result from an act committed in furtherance of the robbery or the escape from such robbery”].) In this case, all three conspirators, including Bhardwaj, were acting in furtherance of the conspiracy, including committing the acts that resulted in Bhardwaj’s death. Although the unintended result—Bhardwaj’s death—was opposed to the conspiracy, the acts causing that result were in furtherance of it. One can hypothesize many killings that harm a conspiracy—killing the only person who knows the combination to a safe, for example—but felony-murder liability would extend to such a killing. People v. Washington, supra, 62 Cal.2d 777, which found no felony-murder *1072 liability for killings by third persons, is distinguishable in this regard. “When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery. . . . Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony. Indeed, in the present case the killing was committed to thwart a felony.” (People v. Washington, supra, at p. 781.) Here, no third party contributed to the death. Bhardwaj’s death was attributable solely to the arsonists’ acts in furtherance of the arson.
Another rationale of Ferlin is that the victim killed himself. Defendant would distinguish People v. Johnson, supra, 28 Cal.App.3d 653, and People v. Cabaltero, supra, 31 Cal.App.2d 52, on this basis. He argues that in those cases, an accomplice killed the victim; here Bhardwaj, like the victim in Ferlin, simply killed himself. We disagree. Whether the deceased was solely responsible for his own death is questionable even under Ferlin’s facts. After all, Ferlin hired the deceased to commit the arson and procured the gasoline, acts that contributed to the death. But even if Ferlin’s rationale applied to its facts, this case is different. Although Bhardwaj may have played a more active role in his own death than did the accomplice victims in People v. Johnson, supra, 28 Cal.App.3d 653, and People v. Cabaltero, supra, 31 Cal.App.2d 52, he did not just kill himself. All three conspirators, including defendant, were at the crime scene and active participants in the events immediately causing his death. Ferlin’s connection to his accomplice’s death was more attenuated than defendant’s connection to Bhardwaj’s death.
We agree with the Court of Appeal’s assessment: “In this case, Bhardwaj did not act alone in perpetrating the arson that was the cause of his death. Defendant was present and an active participant in the crime. And his active conduct was a direct cause of Bhardwaj’s death. In short, regardless of whether the death was accidental or not, defendant’s act of arson killed Bhardwaj. Under the circumstances, Ferlin is inapposite, and the felony-murder rule may be applied to defendant’s conduct.” As the court pointed out, even if “there is no killing ‘of another’ when an accomplice acts alone in causing his own death, there is a killing upon which murder liability may attach when the defendant or other accomplices actively participate in the events causing death.” We conclude that felony-murder liability for any death in the course of arson attaches to all accomplices in the felony at least where, as here, one or more surviving accomplices were present at the scene and active participants in the crime. We need not decide here whether Ferlin was correct on its facts.
Defendant argues that “any retroactive weakening of the Ferlin rule to expand felony-murder liability would be unconstitutionally ex post facto.” We *1073 disagree. “[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law.” (People v. Davis (1994) 7 Cal.4th 797, 811 [30 Cal.Rptr.2d 50, 872 P.2d 591]; see also People v. Blakeley (2000) 23 Cal.4th 82, 91-92 [96 Cal.Rptr.2d 451, 999 P.2d 675].) In this case, however, we are not retroactively enlarging a criminal statute but merely interpreting one. Ferlin and its progeny are factually distinguishable. Our holding is a routine interpretation of existing law, not an overruling of controlling authority or a sudden, unforeseeable enlargement of a statute.
III. CONCLUSION
We affirm the judgment of the Court of Appeal.
George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.[6]

 All further statutory references are to the Penal Code.

 Although the prosecution proceeded on a felony-murder theory with arson the underlying felony, it only sought conviction for second degree murder, possibly, as the Court of Appeal suggested, “out of a belief that a charge of first degree murder would be unduly harsh under the circumstances . . . .”

 People v. Cabaltero, supra, 31 Cal.App.2d 52, has been criticized for reasons not relevant here but never overruled. (See People v. Pulido, supra, 15 Cal.4th at p. 722, fn. 2.)

 Ferlin, supra, 203 Cal. 587, was also incorrect in another part of its analysis, although one not critical to its conclusion. It stated that if the defendant were guilty of Skala’s murder, then Skala must also be guilty of murder, “and if he had recovered from his bums ... he would have been guilty of an attempt to commit murder.” (Id. at p. 596.) The reference to attempted murder is incorrect. California has no crime of attempted felony murder. (People v. Bland (2002) 28 Cal.4th 313, 328 [121 Cal.Rptr.2d 546, 48 P.3d 1107]; see also People v. Mize (1889) 80 Cal. 41, 43 [22 P. 80] [attempted murder requires specific intent to kill].)

 In People v. Pulido, supra, 15 Cal.4th at pages 721-722, we identified two somewhat different lines of authority regarding the exact scope of accomplice liability. As in Pulido, we need not reconcile or choose between these lines because the result here would be the same under either.

 We note that Chief Justice George was outside California (attending a board meeting of the national Conference of Chief Justices, of which he is currently president) when he communicated his concurrence in this opinion by transmitting to the Clerk of the Court (at the court’s chambers in San Francisco), by facsimile, a signed copy of the signature page of this opinion indicating his concurrence. We conclude that the Chief Justice’s concurrence in the opinion in this manner is valid, and that prior decisions of this court indicating that appellate justices may participate in a decision only if they are physically within California at the time they formally sign an opinion or order (see Cothran v. San Jose Water Works (1962) 58 Cal.2d 608, 612 [25 Cal.Rptr. 569, 375 P.2d 449]; People v. Ruef (1910) 14 Cal.App. 576, 623-632 [114 P. 54]) are no longer persuasive and should be overruled.
Under the California Constitution, absent a waiver by the parties, appellate justices must be present at oral argument in order to participate in the appellate decision and judgment (see Cal. Const., art. VI, §§ 2, 3; Moles v. Regents of University of California (1982) 32 Cal.3d 867, 870-874 [187 Cal.Rptr. 557, 654 P.2d 740]), but when justices are present at argument, nothing in the California Constitution or statutes provides that they are disabled from participating in the appellate decision simply because they are temporarily outside of the state at the time they communicate to the Clerk of the Court their concurrence in a proposed opinion (or submit to the clerk a separate proposed opinion for circulation to the other participating justices). In a multijudge appellate court, the operative act that gives legal effect to an appellate court opinion or order .is the formal filing of the opinion or order by the Clerk of the Court. (See Cal. Rules of Court, rules 24, 29.4.) So long as the clerk is authorized by the court to file the opinion or order, and the filing occurs in California, the legally effective judicial act is performed in California. To the extent that the more restrictive rule set forth in the early California cases cited above may have reflected the vagaries and unreliability of the communication systems of the time, modem methods of communication have rendered such concerns obsolete. (See, e.g., Gov. Code, § 5500 et seq. [Uniform Facsimile Signature of Public Officials Act]; Civ. Code, § 1633.1 et seq. [Uniform Electronic Transactions Act].)
Contemporaneously with the filing of the decision in this case, we shall amend the Internal Operating Practices and Procedures of the California Supreme Court to clarify the procedures justices may utilize to communicate their vote on a matter pending before the court.