Filed 1/15/21  P. v. Loyd CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DANIEL RAY LOYD,<br><br>      Defendant and Appellant. | A159458<br><br>(Lake County<br>Super. Ct. No. CR-927420) |

Daniel Ray Loyd appeals the denial of a petition under Penal Code section 1170.95,[1] which authorizes resentencing of persons convicted of felony murder under circumstances that no longer support a conviction of felony murder under section 189 as modified by Senate Bill No. 1437 (2017-2018 Reg. Sess.). Appellant was convicted of felony murder for causing the death of Cindy Quiett by unintentionally shooting her during an attempted robbery. Appellant contends that the trial court erred by denying his resentencing petition without holding an evidentiary hearing to consider a theory not raised at his trial, that Quiett was actually killed by a bullet fired by an unidentified second shooter. However, the jury necessarily found that appellant was Quiett's actual killer, and section 1170.95 does not entitle him to relitigate that fact. We will affirm the order denying his petition.

---

[1] All statutory references are to the Penal Code.

## Factual and Procedural History

This court affirmed appellant's conviction in *People v. Loyd* (Dec. 5, 2017, A149159 [nonpub. opn.]). The opinion describes how appellant's girlfriend arranged to meet Joey Ryden to buy drugs. Quiett was Ryden's girlfriend. She accompanied Ryden to the designated meeting place. Appellant attempted to rob Ryden, pointing a loaded gun at his face. Ryden hit appellant's arm directing the gun away from him but causing appellant to fire a bullet that fatally struck Quiett. It was undisputed that appellant did not intend to shoot Quiett.

At trial, it also was undisputed that the bullet fired from appellant's gun caused Quiett's death. Appellant's appointed counsel, J. David Markham, did not offer evidence or argue that anyone else at the scene had fired or carried a gun. This approach was contrary to the wishes of appellant, who had filed several unsuccessful pretrial motions for the appointment of new counsel (*People v. Marsden* (1970) 2 Cal.3d 118) based on his complaint that Markham had not adequately investigated and was refusing to present a "second shooter" theory.

The jury found appellant guilty of first degree murder (§ 187, subd. (a)), attempted robbery (§§ 211, 664), assault with a firearm (§ 245, subd. (a)(2)), and being a felon in possession of a firearm (former § 12021, subd. (a)(1)) and ammunition (former § 12316, subd. (b)(1)). The jury found true special-circumstance allegations that appellant committed the murder during an attempted robbery (§ 190.2, subd. (a)(17)) and that he personally used a firearm during the offenses (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b)).

After the verdict, the court appointed new counsel, William Conwell, who filed a motion for new trial contending that Markham's failure to develop

a second-shooter theory had denied appellant the effective assistance of counsel. The court denied the motion.

This court affirmed appellant's conviction. Appellant contended on appeal that the court should have instructed the jury that "if it found that 'Ryden's conduct' caused Quiett's death, appellant could not be convicted of felony-murder." (*People v. Loyd, supra*, A149159 [nonpub. opn.].) In appellant's view, evidence that Ryden " 'caus[ed] appellant's firearm to point at [Quiett] and discharge without appellant relinquishing contact with it' raised a 'jury question as to whether appellant or Ryden caused the fatal shot.' " (*Ibid.*) This court rejected the contention, observing that the argument "conflates two distinct issues: the commission of the fatal act and the legal cause of Quiett's death. Only one person committed the fatal act of pulling the trigger and shooting the gun—that person was appellant." (*Ibid.*) Even if Ryden's conduct contributed to the fatal shooting, the opinion explained, that did not preclude the finding that appellant's conduct was also a legal cause of the killing. This was not "a variant of the third-party shooter scenario," as appellant contended, for he "was the only shooter here." (*Ibid.*) In rejecting the related claim that the jury should have been instructed on the doctrine of provocative-conduct murder,[2] the opinion stated, "[a]s appellant implicitly concedes, Ryden did not wrest the gun from appellant or attempt to shoot anyone. Appellant shot the gun that [fired the bullet that] fatally struck Quiett." (*Ibid.*)

---

[2] The doctrine of provocative-conduct murder would have enabled the jury to find appellant guilty of second rather than first degree murder. Under that doctrine, a person can be held "vicariously liable for a killing by a third party" if the third party's fatal act was a reasonable response to a malicious act committed by the defendant during a violent felony. The doctrine did not apply, given that "appellant himself committed the fatal act."

The prior opinion also upheld the denial of appellant's *Marsden* and new-trial motions, which claimed that Markham had provided ineffective assistance by failing to develop and present a "second shooter" theory. Appellant pointed out that Quiett's exit wound was lower than the entrance wound, and argued that therefore either the shooter had been at a higher elevation than Quiett, which he had not been, or that she had been leaning forward when the bullet hit her.

In response to three *Marsden* motions, Markham explained that the ballistics expert he retained had concluded that the fact that "the exit wound . . . was lower than the entrance wound did not exclude appellant as [the] killer." (*People v. Loyd, supra*, A149159 [nonpub. opn.].) In appellant's view, that analysis "hinged on the premise that Quiett was leaning forward when she was shot," so appellant "wanted Markham to argue that Quiett was standing erect when she was shot by a second[,] unknown assailant. Markham explained that he did not have sufficient evidence to present this theory because nobody saw Quiett before she was shot and there was no evidence of a second shooter." (*Ibid.*) Although some witnesses said that they had seen Quiett standing, those witnesses had not seen her when she was shot.

In opposing the new-trial motion, the prosecutor relied on "the dearth of credible evidence to support appellant's second shooter theory and a detailed declaration from Markham [about] his investigation of the case and strategies." (*People v. Loyd, supra*, A149159 [nonpub. opn.].) At an evidentiary hearing on the motion, "the defense elicited testimony from a new expert who opined that if Cindy Quiett was standing erect when she was shot, appellant's bullet could not have killed her, but she could have been killed by an assailant shooting down at her from a higher area." (*Ibid.*) The trial court

4

denied the motion in a lengthy order. It "conducted an extensive review of the trial evidence before concluding that this theory was not a potentially meritorious defense, pointing out that, among other things, nobody reported hearing two shots; there was no evidence that Quiett was standing erect when she was shot; and there was 'no other shooter suspect.' In light of the evidentiary record, the court concluded that using the location of the exit wound . . . to argue there was a second shooter was speculative and fanciful. Furthermore, because the other shooter theory was 'a country mile away from being a potentially meritorious defense,' it was not reasonably probable that the outcome would have been more favorable to the defense if that theory had been presented at trial." (*Ibid.*)

In affirming that ruling, this court held that Markham's investigation had been thorough and reasonable. The defense investigator who conceived the second-shooter theory was not a ballistics expert, and the expert retained by Markham "was unable to offer an opinion that the lethal bullet was not shot from appellant's gun." (*People v. Loyd, supra*, A149159 [nonpub. opn.].) Markham nonetheless arranged for two investigators to keep searching for evidence of a second shooter—to no avail. He had Quiett's clothing "tested for gunshot residue or other evidence," but the results neither suggested a second shooter nor excluded appellant's gun as the source of the fatal bullet.

Moreover, even if appellant could have shown deficient performance, he would also have needed to show that Markham's failure to argue the second-shooter theory caused prejudice. This was a burden appellant could not bear: "There was overwhelming evidence that the bullet that killed Quiett came from appellant's gun. Furthermore, there was no evidence that anybody other than appellant had or used a gun at the time that Quiett was shot and killed. If Markham had argued otherwise, it is not reasonably probable that the

5

outcome of the trial would have been more favorable to appellant." (*People v. Loyd, supra*, A149159 [nonpub. opn.].)

In the section 1170.95 petition now at issue, appellant reprised the arguments from his *Marsden* and new-trial motions. Initially, appellant filed a form section 1170.95 petition in which he simply checked boxes indicating, among other things, "I was not the actual killer." His petition asked the court to appoint counsel, and the court did so. After the People filed an opposition to the petition, attaching a copy of this court's opinion affirming appellant's conviction, counsel filed a supplemental petition containing extracts of testimony from the trial and from the hearing on the motion for a new trial. The supplemental petition states that "additional evidence was presented during the new trial motion to cause doubt that [appellant] fired the shot that killed Ms. Quiett," and that "there was evidence presented at trial and the new trial hearing to support the theory of a second shooter, namely the downward path of the wound."[3] In oral argument on the petition, counsel argued that "what has not really been addressed . . . is the issue that Daniel Loyd may not have been the shooter [in] this case." The attorney acknowledged that "yes, he fired a gun," but asserted that evidence "raised during the new trial motion" had "cast doubt as to whether or not the bullet from that gun is the bullet that hit Ms. Quiett and killed her."

The trial court held that appellant had not made a prima facie showing that he is entitled to relief.[4] He made no showing "that he was an

_____

[3] Appellant also noted evidence of two 911 calls made that night. This strand of the argument is cryptic, but seems intended to imply that there may have been two gunshots.

[4] The court also held in the alternative that Senate Bill No. 1437 is unconstitutional, but the Attorney General concedes on appeal that subsequent authority has settled the constitutionality of the statute. (*People*

accomplice," and "[t]here is substantial evidence that [appellant] was the perpetrator of the felony robbery and that it was [appellant] holding the loaded gun, finger on the trigger, pointing at the intended victim, when in a type of struggle with the intended victim over the gun, the gun [went] off and kill[ed] Quiett. In this analysis, [appellant] is the actual killer." He "could still be convicted of felony murder under the current law," and the "evidence and argument present[ed] on a defense theory of a 'second shooter' would not prohibit the . . . conviction under [the] current law of felony murder." Appellant timely appealed.

## Discussion

Senate Bill No. 1437 "significantly modif[ied] the law relating to accomplice liability for murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 325, review granted, Mar. 18, 2020, S260493.) The legislation " 'amend[ed] the felony murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)[5]

---

*v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270; *People v. Lamoureux* (2019) 42 Cal.App.5th 241.)

[5] Senate Bill No. 1437 added section 189, subdivision (e): "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

7

Senate Bill No. 1437 also enacted section 1170.95, which authorizes petitions for resentencing. Subdivision (a) of the statute requires a petitioner to allege that he or she could not be convicted of murder because of changes in sections 188 and 189 made by Senate Bill No. 1437. Subdivision (c) creates a procedure to resolve such a petition: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." The court appoints counsel (if requested), the prosecutor files a response, and the petitioner may file a reply.[6] (*Ibid.*) "If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (*Ibid.*) Accordingly, a court will not hold an evidentiary hearing unless it first finds a prima facie showing of entitlement to relief. (*People v. Edwards* (2020) 48 Cal.App.5th 666, 673, review granted July 8, 2020, No. S262481.)[7]

---

[6] We need not address the conflict between decisions holding that section 1170.95 requires *two* distinct reviews of a petition's prima facie sufficiency—one before a court appoints counsel or orders a response, and another before it orders an evidentiary hearing (e.g., *People v. Verdugo, supra,* 44 Cal.App.5th at pp. 327–328)—and the decision by our colleagues in Division One holding that the statute requires only *one* prima facie review (*People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, No. S264684). The trial court in this case appointed counsel and ordered a response, and it declined to order an evidentiary hearing only after considering counsel's arguments.

[7] When it ruled on the petition, the trial court did not have the benefit of *People v. Drayton* (2020) 47 Cal.App.5th 965, which details how to analyze the prima facie sufficiency of a section 1170.95 petition. A court must identify all allegations in the petition that are not contrary to facts conclusively established by the record of conviction and—without engaging in factfinding or weighing the evidence offered to support those allegations—assume their truth, and assess whether they state a prima facie case for relief. (*Id.* at pp. 977–978; cf. *People v. Garcia* (2020) 57 Cal.App.5th 100, 116 [disagreeing with *Drayton* regarding standard for prima facie sufficiency].) Because the

8

The record before the trial court establishes that the jury found that appellant was the actual killer. Whether or not Ryden's act of pushing appellant's arm was a legal cause of Quiett's death, appellant pulled the trigger of the gun that fired the fatal bullet.[8] As stated in this court's prior opinion, "[a]s appellant implicitly concedes, Ryden did not wrest the gun from appellant or attempt to shoot anyone. Appellant shot the gun that [fired the bullet that] fatally struck Quiett." There was no dispute at trial that Quiett was killed by a single gunshot, and appellant conceded in the hearing on this petition that he fired a gunshot. The only dispute at trial was whether appellant was legally responsible for firing that shot. Appellant's main claim for section 1170.95 relief is the same contention that underlay his new-trial motion—that there is evidence suggesting that a bullet fired by an unidentified "second shooter" killed Quiett. But as the trial court properly held in denying the new trial motion, this theory was "speculative and fanciful," and it remains so. Even if the felony murder instruction given at trial would have permitted the jury to convict appellant if his shot did not kill the victim, the evidence before the jury contained no basis for concluding there was a second shooter. And the current petition proffers no new or additional evidence that could support any conclusion other than that appellant fired the shot that killed Quiett, albeit accidentally. The purpose of section 1170.95 is to provide relief if the facts no longer support a felony murder conviction under current law. There being no proffer of evidence to

allegations in appellant's petition fail as a matter of law to make a prima facie showing, any analytic missteps in the trial court's order are immaterial.

[8] The Attorney General equates the jury's special-circumstance finding that appellant personally "used" a firearm with an express finding that he fired the gun, but as appellant notes, none of the enhancements at issue necessarily requires that the defendant have fired the gun. (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b).)

support any such fact, there was no prima facie showing that would establish a right to relief under the new statute. Senate Bill No. 1437 did not change the law making the "actual killer" of a person killed in the course of certain felonies (including attempted robbery) liable for first degree murder, even if the killing was not intended. (See *People v. Jackson* (2016) 1 Cal.5th 269, 347.)

In his reply brief, appellant raises a new argument. He suggests that he may not qualify as an "actual killer" under a recent analysis of that term in *People v. Garcia* (2020) 46 Cal.App.5th 123 (*Garcia*). Appellant acknowledges that the "actual killer" need not have intended to kill but contends that "the term 'actual killer' as used in amended . . . section 189 must be construed to require proof that the defendant intended to do the act that caused the death."

*Garcia* does not support that theory. *Garcia* involved a home-invasion robbery in which one of the robbers put tape over the victim's mouth, leading to his death by asphyxiation. (*Garcia, supra,* 46 Cal.App.5th at pp. 145–146.) The robbers did not intend to kill the victim. (*Id.* at p. 143.) The Court of Appeal held that the record would permit a finding that a defendant was an "actual killer" for purposes of a felony-murder special circumstance (§ 190.2, subd. (b)) only if it contained substantial evidence that the defendant himself personally put tape on the victim's face. (*Id.* at p. 145; see also *id.* at p. 151 ["Although section 190.2(b) does not define the phrase 'actual killer,' the California Supreme Court has used the term 'personally killed' when describing liability of an 'actual killer' for the felony murder special circumstance under section 190.2."].) The dispute in *Garcia* was not whether the defendant intended to perform the act that caused the victim's death (i.e., putting tape on his mouth), but whether it was the defendant or someone else who performed that fatal act. In this case, the jury necessarily found that

10

appellant performed the fatal act of pulling the trigger of the gun that fired the bullet that killed Quiett.

Senate Bill No. 1437 did not change the longstanding rule that a defendant is guilty of felony murder if that defendant, while intending to commit a qualifying felony, personally performs an act that causes death, regardless of whether the fatal act was intentional or accidental. "*Except for felony murder,* section 188(a)(3) makes personally possessing malice aforethought a necessary element of murder." (*People v. Gentile, supra,* 10 Cal.5th at p. 846, italics added.) In *People v. Coefield* (1951) 37 Cal.2d 865, a robber struck a store clerk in the head with his pistol to "knock him out," but the gun discharged, killing the man. (*Id.* at pp. 867–868.) The Supreme Court held that section 189 applies to any killing during the commission of a robbery "regardless of whether it was intentional or accidental." (*Id.* at p. 868; accord, *People v. Billa* (2003) 31 Cal.4th 1064, 1068 ["felony-murder rule covers 'a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident' "]; see also *People v. Washington* (1965) 62 Cal.2d 777, 781 ["inadvertent or accidental killings are first degree murders when committed by felons in the perpetration of robbery"]; *Garcia, supra,* 46 Cal.App.5th at p. 152.)

### Disposition

The order denying the petition is affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
TUCHER, J.

11