Filed 9/11/23; Certified for Publication 9/26/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050142 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 162866) |
| v. | |
| DARRELL ANTHONY BODELY, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

In 1993, a jury convicted defendant Darrell Anthony Bodely of first degree murder, burglary, and robbery (Pen. Code, §§ 187, 211, 212.5, subd. (b), 459, 460, subd. (b)).[1]  The jury found true the allegation that defendant personally used a deadly and dangerous weapon (an automobile) in the commission of the murder (§ 12022, subd. (b)).  The trial court sentenced defendant to prison for 26 years to life for the murder, consecutive to his sentence on the burglary and robbery counts.

Defendant challenges the trial court's denial of his former section 1170.95 (now section 1172.6) petition to have his murder conviction vacated and to be resentenced. The trial court denied defendant's petition, ruling that defendant failed to make a prima facie showing of entitlement to relief because the record established that defendant was

---

[1] All further statutory references are to the Penal Code.

the actual killer of the victim. Defendant contends that the trial court erred because the record left open the possibility that he did not intentionally kill the victim and thus he may not have been the actual killer of the victim, warranting relief under section 1172.6. For reasons that we will explain, we will affirm the trial court's denial of defendant's petition.

## II. BACKGROUND

This court previously summarized the facts of defendant's case as follows: "Defendant entered a supermarket, grabbed $75 out of a cash register and ran. Several supermarket employees pursued him. He ran out of the supermarket into the parking lot and got into his car. Joseph Andre, who was in the parking lot at the time, joined in the chase. Andre ran in front of defendant's car and put his hands on the hood as if to stop the car. Andre then went to the driver's side window of defendant's car, put his arm inside the car and told defendant to stop. Defendant drove away, jerking the car sharply to the left. Defendant's car hit Andre, knocking Andre onto the hood of the car. Andre then fell off of the hood and struck the back of his head on the pavement. This impact resulted in Andre's death. Defendant sped up and drove away. Defendant was convicted of first degree murder [citation], burglary and an unrelated robbery and committed to state prison." (*People v. Bodely* (1995) 32 Cal.App.4th 311, 312, fn. omitted (*Bodely*).)

The prosecutor relied on a theory of felony murder to prove defendant's guilt on the murder count. While the taking of the $75 from the grocery store was charged as a burglary and the jury found defendant guilty of burglary, the prosecution argued that the jury could also find that the incident could be characterized as a robbery, and thus defendant would still be guilty of first degree felony murder for Andre's death. The jury was instructed, consistent with the felony-murder rule, that defendant could be found guilty of murder if the "killing was done with malice aforethought or occurred during the commission or attempted commission of burglary or robbery," and that the "unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs

2

during the commission or attempted commission of the crime or as a direct causal result of burglary or robbery is murder of the first degree when the perpetrator had the specific intent to commit such crime." The prosecutor's closing argument began by telling the jury: "[M]urder, in the way it occurred in this case, is what we call felony murder. [¶] [A] killing which occurs during the course of certain felonies, and burglary or robbery are two of those felonies, is first-degree murder. What we call it is felony murder. And that is a killing which is unintended, unintentional, could even be accidental."[2] The prosecutor concluded his closing argument by stating: "The law says a human life is valuable and a human life taken during the commission of a serious felony is nothing more and nothing less than first-degree murder." Likewise, on appeal, this court summarized its holding as follows: "The question presented by this case is whether a killing which occurs during the perpetrator's flight from a burglary occurs 'in the perpetration' of the burglary and therefore is felony murder. We conclude that such a killing is felony murder and affirm the judgment." (*Bodely*, *supra*, 32 Cal.App.4th at p. 312.)

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, imposing "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 added section 1170.95 (now section 1172.6), which provides an avenue for a person convicted in a case involving felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced. Under this statute, after the parties have had the opportunity to submit briefings on a petition, the trial court "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)

---

[2] The prosecutor argued, however, that "[i]n this case the killing was virtually intentional, in terms of being the result of an intentional act."

Defendant filed a petition under former section 1170.95 in March 2022, asserting that he could not presently be convicted of murder because of changes made to sections 188 and 189. The prosecutor opposed the petition, asserting that defendant "was convicted as a direct perpetrator and direct perpetrators, even if convicted of felony murder, are ineligible" for relief. The prosecution's opposition relied on section 189, subdivision (e)(1), which states that a participant in the perpetration or attempted perpetration of a listed felony (including robbery or burglary) in which a death occurs is liable for the murder if "[t]he person was the actual killer."

The trial court took judicial notice of several documents from defendant's record of conviction in considering whether defendant's petition presented a prima facie case for relief. The trial court then denied the petition, finding that the record of conviction established defendant was not eligible for resentencing as a matter of law. The trial court ruled as follows:

"Here, in the face of Petitioner's form petition, this Court can use several sources to conclude that his declaration is not legally or factually correct as a matter of law.

"The jury instructions demonstrate Petitioner's ineligibility for resentencing. The instructions simply did not contemplate or include any reference to an accomplice. [Citations.] Indeed, a review of the evidence presented at trial [citations] demonstrates that there was no evidence of any accomplice. [Fn. omitted.] Because there was zero evidence of any accomplice, this Court is not weighing facts, but rather acknowledging that the jury's verdicts, coupled with the absence of any accomplice instructions, necessarily rested on Petitioner being the direct perpetrator and therefore the actual killer. In other words, it is a legal impossibility for Petitioner to be eligible for resentencing, as his conviction could not have been based on an impermissible theory of accomplice liability. [Fn. omitted.] Moreover, while Petitioner's personal use of a car is not dispositive of ineligibility, it can be considered as further support for the fact that Petitioner was the actual killer.

4

" 'The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' [Citations.] Yet, that is exactly what Petitioner is attempting to do by asserting eligibility. Because a 'do-over on factual disputes that have already been resolved' is not permitted under section 1170.95, the petition must be denied."

The trial court thus concluded that "[t]he jury necessarily determined that Petitioner was the direct perpetrator because there is no evidence in the record that suggests an accomplice—not in the jury instructions, not in the verdicts, and not in the evidence presented at trial. The record of conviction established Petitioner's ineligibility as a matter of law." This appeal followed.

### III. DISCUSSION

Defendant contends that the trial court erred by denying his petition without issuing an order to show cause and conducting an evidentiary hearing. He asserts that he established a prima facie case for relief in two respects. First, defendant asserts the record does not establish as a matter of law that he was the actual killer of Andre, because the petition established "the possibility that [defendant] could have been convicted of 'murder' based on an accidental death." Defendant cites Court of Appeal decisions in *People v. Vang* (2022) 82 Cal.App.5th 64 (*Vang*) and *People v. Jennings* (1966) 243 Cal.App.2d 324 (*Jennings*) to support this argument. Second, defendant contends that "an instruction on producing a death via the 'natural and probable consequences' of other acts encouraged the jury to treat the question of causation in the broadest possible terms," thus indicating that defendant may not have been Andre's actual killer as that term is defined. We hold that the trial court did not err by denying defendant's petition for relief.

#### A. *Legal Principles*

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) " 'Under the felony-murder doctrine as it existed at the time of [defendant's]

5

trial, "when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony," the defendant could be found guilty of the crime of murder, without any showing of "an intent to kill, or even implied malice, but merely an intent to commit the underlying felony." [Citation.] Murders occurring during certain violent or serious felonies were of the first degree, while all others were of the second degree. [Citations.]' [Citations.]" (*People v. Wilson* (2023) 14 Cal.5th 839, 868 (*Wilson*).)

The Legislature passed Senate Bill 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "As amended by Senate Bill No. 1437, the text of section 189 provides no additional or heightened mental state requirement for the 'actual killer' prosecuted under a felony-murder theory; it requires only that '[t]he person was the actual killer.' [Citation.]" (*People v. Albert Garcia* (2022) 82 Cal.App.5th 956, 967 (*Garcia*).) "In our view, the Legislature's purpose in revising the law as it relates to felony-murder liability was to ensure proportionate punishment for accomplices in the felony murder context, and that the term 'actual killer' is meant to distinguish the person who actually caused the victim's death, including in circumstances where two or more persons participated in the felony." (*Id.* at p. 968.)

"Senate Bill 1437 also created a procedural mechanism for those convicted of murder under prior law to seek retroactive relief. [Citations.] Under section 1172.6, the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' made by Senate Bill 1437. [Citation.] The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to

6

relief.  [Citation.]  'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citations.]' [Citation.]"  (*Wilson*, *supra*, 14 Cal.5th at p. 869, fn. omitted.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under [former] section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  . . .  [¶]  While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for [former] section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." '  [Citation.]"  (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)  The jury instructions are part of the record of conviction and may be reviewed to make the prima facie determination.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.)

We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage.  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*).)

**B.  *Analysis***

As the trial court found, the record of conviction reveals that defendant was convicted under the felony-murder rule for the death that occurred in defendant's perpetration of the burglary of the grocery store.  Because defendant's conviction was based on the felony-murder rule, defendant's petition would establish a prima facie case

for relief unless the record conclusively establishes that one of the listed exceptions in section 189, subdivision (e), applies to his case. The trial court ruled that the record of conviction conclusively establishes that defendant was the actual killer of Andre under section 189, subdivision (e)(1), and thus defendant is not entitled to relief as a matter of law. We agree.

As the trial court ruled, the jury instructions contained no reference to an accomplice. The evidence at trial revealed no indication of any accomplice. Defense counsel did not argue or even insinuate that any other person was responsible for Andre's death, instead acknowledging in closing argument that "my client fundamentally did what he's been accused of doing." The sole defense offered at trial was that the taking of the $75 amounted to a petty theft rather than either a burglary or a robbery, and thus defendant should not be found guilty of first degree felony murder. As the sole and actual killer of Andre, defendant is ineligible for resentencing under section 1172.6 as a matter of law. (§ 189, subds. (a) & (e)(1).) As the Court of Appeal held in *People v. Hurtado* (2023) 89 Cal.App.5th 887: "Here is something novel—a criminal case that need not undergo a hearing pursuant to Penal Code section 1170.95 (now section 1172.6). Why? Because the defendant was the only person who committed the crime . . . for which a jury found him guilty beyond a reasonable doubt." (*Id.* at p. 889, fns. omitted.) (See also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [affirming trial court's denial of a section 1172.6 petition at the prima facie stage because "the record here makes clear that Delgadillo was the actual killer and the only participant in the killing"]; *People v. Patton* (2023) 89 Cal.App.5th 649, 657 [affirming trial court's denial of petition for resentencing because "[a]s the sole and actual perpetrator of the attempted murder . . . Patton is ineligible for resentencing as a matter of law"], review granted June 28, 2023, S279670.)

*Vang* and *Jennings* do not support defendant's argument. In *Vang*, the court summarized the factual scenario as follows: "In short, defendant, who has a long history

of domestic violence, had an argument with his wife. After she fled in her car, defendant followed, eventually forced her to stop, and coerced her (through force or fear) into his vehicle. As defendant was driving away, his wife opened the door and jumped from the moving vehicle, resulting in her death." (*Vang, supra,* 82 Cal.App.5th at p. 69.) On defendant's direct appeal from his conviction for first degree felony murder and other offenses, the court held that the meaning of the term "actual killer" in section 189, subdivision (e), has the same meaning as the term "actual killer" in section 190.2, subdivision (b), a special circumstance provision. (*Vang, supra,* at pp. 83, 90–91.) The *Vang* court cited two other Court of Appeal decisions to establish the meaning of "actual killer" in both sections. First, *Vang* cited *People v. Javier Ruben Rodriguez Garcia* (2020) 46 Cal.App.5th 123 (*Rodriguez Garcia*) for the proposition that "the meaning of ' "actual killer" ' under section 190.2 is literal: the actual killer is the one who personally killed the victim." (*Vang, supra,* at p. 90, citing *Rodriguez Garcia, supra,* at pp. 151–152.) Second, *Vang* cited *Lopez, supra,* as concluding that "the term 'actual killer' means someone who personally killed the victim, not someone who merely commits an act that is a proximate cause of the victim's death." (*Vang, supra,* at p. 91, citing *Lopez, supra,* 78 Cal.App.5th at pp. 16–19.) The Court of Appeal in *Vang* found that the jury was not properly instructed on the meaning of "actual killer" and the court therefore reversed the conviction, finding that "the evidence does not permit any inference that defendant was the direct cause of [his wife's] death . . . ." (*Vang, supra,* at p. 91.)

The instant case is factually distinguishable from *Vang*, and even accepting *Vang*'s definition of "actual killer," the record conclusively establishes defendant was Andre's actual killer. In *Vang*, the victim jumped from the defendant's moving car. The Court of Appeal agreed with the defendant's argument that because the victim jumped from the vehicle "and there was no evidence that defendant directly caused her death," the defendant was not the actual killer as a matter of law. (*Vang, supra,* 82 Cal.App.5th at p. 80.) Here, by contrast, defendant directly hit Andre with a car, and Andre died from

9

head trauma because his head struck the payment after being hit by the car. This was not disputed at trial. No other contributing factor was alleged to be involved in Andre's death, and the record contains no indication that Andre played any role in contributing to his own demise analogous to the victim in *Vang*. To the contrary, defense counsel argued in closing: "Nobody is going to say it was Mr. Andre's fault, because certainly it wasn't. What Mr. Andre did that day, if he did anything, is to be admired and respected, and because, as a member of our community, he cared enough to intervene." In addition, the jury concluded that defendant personally used a deadly and dangerous weapon in the commission of the murder, further establishing that defendant personally killed the victim. While defendant argues the record indicates he may not have intended to kill Andre, nothing in *Vang* states that a person who inadvertently kills a victim in the perpetration of a felony is not an actual killer. The factual distinctions between the instant case and *Vang* support the trial court's ruling that the record conclusively established that defendant "personally killed" Andre, instead of merely proximately causing Andre's death. Thus, even accepting *Vang*'s definition of "actual killer," *Vang* does not support defendant's argument that the trial court erred in denying his petition.

In *Jennings*, three people formed a partnership to organize and operate a business. (*Jennings*, *supra*, 243 Cal.App.2d at p. 326.) The three partners then conspired to set fire to the premises to collect insurance proceeds. (*Ibid.*) Two of the partners paid an accomplice to set fire to the premises, but the accomplice ended up fatally burning himself. (*Id.* at pp. 326–327.) The Court of Appeal outlined the felony-murder rule, noting that the rule "has been criticized upon the grounds that in almost all cases in which it is applied it erodes the relation between criminal liability and moral culpability. [Citations.]" (*Id.* at p. 328.) The court then held "it is not murder for an accomplice to kill himself accidentally while engaged in the commission of the crime of arson, and consequently his principal may not be charged with such offense inasmuch as the act of accidentally killing one's self does not constitute an 'unlawful killing' within the

10

meaning of [section 187], particularly in view of the rule that the felony-murder doctrine was enacted for the protection of the public, and not for the benefit of the lawbreaker." (*Id.* at p. 329.)

*Jennings* does not support defendant's argument that he was not the actual killer of Andre. *Jennings* contains no reference to the term "actual killer." *Jennings* is also factually distinguishable from defendant's case because in *Jennings*, the accomplice accidentally killed himself while committing arson. Here, Andre did not cause his own death; rather, defendant killed Andre. The court in *Jennings* held that the felony-murder rule did not apply "for the benefit of the lawbreaker" (the accomplice who fatally burned himself), but Andre was no lawbreaker; he attempted to intervene to foil a burglary. In addition, despite the language in *Jennings* defendant cites about criticism of the felony-murder rule, the court noted that "[n]evertheless, it is the law of this state," though the court also stated that the rule "should not be extended beyond any rational function that it is designed to serve." (*Jennings*, *supra*, 243 Cal.App.2d at p. 328.) Thus, *Jennings* does not alter the conclusion that defendant was the actual killer of Andre.

Defendant's case is more akin to *Garcia*, *supra*. In *Garcia*, the defendant physically assaulted and stole money from an 82-year-old man who died about an hour later from lethal cardiac arrhythmia. (*Garcia*, *supra*, 82 Cal.App.5th at p. 959.) The defendant petitioned for relief under section 1172.6, and the trial court found the defendant was ineligible for resentencing as a matter of law because he was the actual killer of the victim. (*Garcia*, *supra*, at p. 959.) On appeal, the Court of Appeal rejected the defendant's argument "that the term 'actual killer' should be interpreted as only applying to those persons with intent to kill or also identified as a major participant in the felony who acted with reckless indifference to human life." (*Id.* at p. 969.) However, the court held that even assuming the defendant's argument was correct that "the 'actual killer' is the person who 'personally' killed the victim[,] reversal is not required." (*Id.* at p. 970, fn. omitted.) The court held: "[T]he record of conviction demonstrates that

11

defendant, acting alone, committed the acts against [the victim] that directly contributed to [the victim's] lethal cardiac arrhythmia. In short, because defendant's acts in robbing [the victim] (including assault) were a substantial factor in bringing about [the victim's] death, defendant 'personally killed' [the victim] and was the 'actual killer' within the meaning of section 189, subdivision (e)(1). This conclusion is not undermined by the fact that [the victim's] preexisting heart condition contributed to his death. [Citations.]" (*Id.* at pp. 970–971, fn. omitted.) As in *Garcia*, defendant here acted alone in committing the acts that directly contributed to the victim's death. In fact, defendant's case presents a clearer example of an actual killer than the facts in *Garcia*. Andre suffered his injuries immediately upon being hit with the car, while in *Garcia* the fatal arrhythmia did not occur until later and a preexisting condition contributed to the arrhythmia. *Garcia* supports the conclusion that defendant was Andre's actual killer.

Defendant's other argument centers on the following jury instruction: "The law has its own particular way of defining cause. A cause of the death is an act that sets in motion a chain of events that produces as a direct, natural and probabl[e] consequence of the act the death and without which the death would not occur." Defendant argues that this instruction "had the potential to exacerbate the impact of the felony murder instruction because it expanded the scope of acts that could support liability even more broadly than did the felony murder instruction itself." He asserts that the felony murder instruction told the jury the killing needed to occur " 'during the commission or attempted commission' " of a burglary or robbery, and that the causation instruction "broadened this focus so that it could include any act that set in motion a 'chain of events' that resulted in death as a natural and probable consequences." He argues that this instruction contrasts with Senate Bill 1437's emphasis on individual culpability, and that the language in the instruction "permitted the jury to use the most minor of acts to reach the most serious of verdicts, with scant consideration of what [defendant] himself might have known or intended."

12

This instruction does not alter the conclusion that defendant's record of conviction conclusively establishes defendant was Andre's actual killer and thus is ineligible for relief. Defendant acknowledges that this instruction did not describe the natural and probable consequences doctrine, a doctrine that recent amendments eliminated as a basis for murder liability as it applies to aiding and abetting. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) Defendant acknowledges: "No co-conspirator is at issue here, and the causation instruction therefore did not invite the jury to attribute anyone else's mental state to [defendant]." Even if the instruction presented a view of causation inconsistent with current murder law,[3] the record conclusively establishes that defendant did more than set in motion a chain of events that produced Andre's death. Defendant struck Andre with his car, directly causing Andre to strike his head on the pavement. The record contains no indication that any other people were responsible for Andre's death or that any other intervening causes contributed to Andre's death. To the contrary, the jury found that defendant personally used a deadly and dangerous weapon in the commission of the murder. Defendant's jury was not instructed on the now-eliminated natural and probable consequences doctrine, and defendant cites no authority for the proposition that he is entitled to relief because of this instruction. To the extent that he argues that the instructions incorrectly stated the standard for causation as a matter of law, his judgment

---

[3] The California Supreme Court recently cited the following instruction with approval: " '[A] "cause of death of [the victim] is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the death of [the decedent] and without which the death would not occur." [Citation.]' " (*People v. Carney* (2023) 14 Cal.5th 1130, 1138.) The court cited this instruction in holding that the trial court properly instructed the jury on substantial concurrent causation, and it upheld the defendants' convictions even though neither defendant fired the shot that killed the victim because "their life-threatening deadly actions constituted proximate cause . . . ." (*Id.* at p. 1135.) The court also held that it was "unpersuaded" by the defendants' "effort to bring the definition of proximate cause, which deals with the actus reus of a crime . . . within the ambit of Senate Bill No. 1437 and [*People v. Chiu* (2014) 59 Cal.4th 155]'s discussion of the natural and probable consequences doctrine, which both concern the mens rea of a crime." (*Id.* at p. 1145.)

is long since final and he cannot now raise any issues related to the conduct of his trial. (*People v. Allison* (2020) 55 Cal.App.5th 449, 461, disapproved on another ground in *People v. Strong* (2022) 13 Cal.5th 698, 718, fn. 3.)

The record of conviction contains facts refuting defendant's allegations in his petition that he could not be convicted of murder under current law, and the trial court was thus justified in making a credibility determination adverse to the petitioner. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The record of conviction conclusively establishes as a matter of law that defendant was the sole person responsible for Andre's death and that defendant personally killed Andre. (*Wilson*, *supra*, 14 Cal.5th at p. 869.) Thus, defendant remains liable for first degree felony murder as the actual killer of Andre. We find no error in the trial court's ruling upon our independent review. (*Lopez*, *supra*, 78 Cal.App.5th at p. 14.)

## IV.  DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

WILSON, J.

_____

BROMBERG, J.

*People v. Bodely*
**H050142**

Filed 9/26/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050142 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 162866) |
| v. | |
| DARRELL ANTHONY BODELY, | |
| Defendant and Appellant. | |

THE COURT:

     The opinion in the above-entitled matter filed on September 11, 2023, was not certified for publication in the Official Reports. The Attorney General's Office requests that the opinion be certified for publication. Under California Rules of Court, rule 8.1105(c), the opinion is ordered published.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

_____
WILSON, J.

_____
BROMBERG, J.

*People v. Bodely*
**H050142**

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.:  162866


Trial Judge:                                    Hon. William J. Monahan


Attorneys for Defendant and Appellant:    Alex N. Coolman
Darrell Anthony Bodely

                                                Sixth District Appellate Program


Attorneys for Plaintiff and Respondent:    Ron Bonta
The People                                      Attorney General of California
                                                Lance E. Winters
                                                Chief Assistant Attorney General
                                                Jeffrey M. Laurence
                                                Senior Assistant Attorney General
                                                Eric D. Share
                                                Supervising Deputy Attorney General
                                                Alisha M. Carlile
                                                Deputy Attorney General

*People v. Bodely*
**H050142**