Filed 4/17/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NICHOLAS BEAUDREAUX,<br><br>    Defendant and Appellant. | A166001<br><br>(Alameda County Super. Ct.<br>No. 160022B)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

The court orders that the opinion filed in this appeal on March 28, 2024, be modified as follows:

1. On page 1, move footnote 1 from after "Penal Code" to the end of the sentence (there is no change to the wording of footnote 1) so that the sentence and footnote read as follows:

   Nicholas Beaudreaux, who is now serving an aggregate sentence of 50 years to life for the first degree murder and attempted robbery of Wayne Drummond, has twice unsuccessfully petitioned for resentencing under Penal Code section 1172.6.[1]

---

[1] Undesignated statutory references are to the Penal Code. Originally numbered section 1170.95 when enacted in 2018 as Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4) (Senate Bill 1437), the statute was renumbered to section 1172.6 effective June 30, 2022 (Stats.

1

2. On page 2, in the first paragraph of the Background section, in the first sentence change "a" to "the" before "clerk's" (and retaining footnote 2) so the sentence and footnote read as follows:

The pertinent record of conviction consists of the clerk's transcript, the trial court minutes, and the jury instructions and verdicts from the underlying proceedings against Beaudreaux in 2009.[2]

3. On page 24, in the first paragraph, delete the fourth sentence (which begins with "After taking") and replace with the following sentence so it reads:

After taking the entirety of the record of conviction into account, the dispositive considerations for us are that (1) while Crowder was charged as a codefendant with murder, he was never charged with discharging a gun or inflicting great bodily injury on Drummond, and (2) the jury instructions did not supply a basis for the jury to convict Beaudreaux as an aider and abettor, even if it concluded independently that Drummond was the shooter.

---

2022, ch. 58, § 10). Because this statutory change does not affect our consideration of the issues raised in this appeal, we refer to the statute as section 1172.6 throughout the rest of this opinion even though it was referenced in the proceedings below by its former enumeration.

[2] The appellate record in this case also contains (1) the 2020 appellate court opinion, which, as further explained below, we may consider for procedural history only, and (2) a probation department report, which we cannot consider because, "[o]rdinarily, a probation officer's report is not a part of the record of conviction." (*People v. Del Rio* (2023) 94 Cal.App.5th 47, 56, following *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458; accord, *People v. Soto* (2018) 23 Cal.App.5th 813, 816, fn. 2.)

The modifications effect no change in the judgment.

Date: _____          _____P. J.

J. Brown

Trial Court:  Superior Court of California, County of Alameda

Trial Judge:  Hon. Morris D. Jacobson

Counsel:      Janet J. Gray, under appointment by the Court of Appeal, for
              Defendant and Appellant.

              Rob Bonta, Attorney General, Lance E. Winters, Chief
              Assistant Attorney General, Jeffrey M. Laurence, Senior
              Assistant Attorney General, Bridget Billeter, Supervising
              Deputy Attorney General, and Masha A. Dabiza, Deputy
              Attorney General, for Plaintiff and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br>      Plaintiff and Respondent,<br><br>                    v.<br><br>NICHOLAS BEAUDREAUX,<br>      Defendant and Appellant. | A166001<br><br>(Alameda County<br>Super. Ct. No. 160022B) |

Nicholas Beaudreaux, who is now serving an aggregate sentence of 50 years to life for the first degree murder and attempted robbery of Wayne Drummond, has twice unsuccessfully petitioned for resentencing under Penal Code[3] section 1172.6.  In the resentencing proceedings on his second petition, the trial court ruled that the order denying relief on his first petition, an order we affirmed in 2020, forecloses relief.

Beaudreaux appeals again, this time relying on our Supreme Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), which clarified the

---

[3] Undesignated statutory references are to the Penal Code.  Originally numbered section 1170.95 when enacted in 2018 as Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4) (Senate Bill 1437), the statute was renumbered to section 1172.6 effective June 30, 2022 (Stats. 2022, ch. 58, § 10).  Because this statutory change does not affect our consideration of the issues raised in this appeal, we refer to the statute as section 1172.6 throughout the rest of this opinion even though it was referenced in the proceedings below by its former enumeration.

applicable procedural law governing section 1172.6 resentencing proceedings in some notable ways. He also relies on Senate Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551) (Senate Bill 775), which was enacted in late 2021, codifying and in some respects clarifying *Lewis*.

We will again affirm. We agree with Beaudreaux that, in light of *Lewis* and Senate Bill 775, the trial court erred at the prima facie stage of these resentencing proceedings by once again failing to appoint counsel, and by relying on substantive facts summarized in this court's 2011 opinion affirming his conviction. But those errors were harmless.

The dispositive question here is this. Based on the record of conviction before us—which consists of the jury instructions in Beaudreaux's 2009 trial, the jury's verdicts, and the findings accompanying the verdicts—must we conclude that Beaudreaux was convicted as Drummond's actual killer? We think so. The record here is limited, but it is sufficient to refute conclusively Beaudreaux's attempt to allege entitlement to section 1172.6 relief.

## I. BACKGROUND

The pertinent record of conviction consists of a clerk's transcript, the trial court minutes, and the jury instructions and verdicts from the underlying proceedings against Beaudreaux in 2009.[4] Supplementing that, we grant Beaudreaux's request for judicial notice under Evidence Code sections 452 and 459 of (1) our 2011 appellate opinion affirming his conviction in the underlying case (*People v. Beaudreaux* (Jul. 21, 2011,

___

[4] The appellate record in this case also contains (1) the 2020 appellate court opinion, which, as further explained below, we may consider for procedural history only, and (2) a probation department report, which we cannot consider because, "[o]rdinarily, a probation officer's report is not a part of the record of conviction." (*People v. Del Rio* (2023) 94 Cal.App.5th 47, 56, following *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458; accord, *People v. Soto* (2018) 23 Cal.App.5th 813, 816, fn. 2.)

A126140) [nonpub. opn.] (*Beaudreaux I*)), and (2) the clerk's transcript filed in the appeal from the trial court's denial of his previous resentencing petition (*People v. Beaudreaux* (Aug. 31, 2020, A159751) [nonpub. opn.] (*Beaudreaux II*).)  From this limited record, we glean the following procedural facts.

## A. *Beaudreaux's 2009 Trial and Convictions*

In December 2008, Beaudreaux and a codefendant, Brandon Crowder, were charged in an information filed by the Alameda County District Attorney with the same two counts:  (1) murdering Drummond in violation of section 187, subdivision (a), and (2) attempting to rob Drummond in violation of section 211, both crimes occurring on or about September 4, 2006.

Each count included the same two sentencing enhancement allegations: against Crowder, under section 12022, subdivision (a)(1), that during the commission of the crime "a principal" was armed with a firearm; and against Beaudreaux, under sections 12022.5, 12022.7, and 12022.53, that he personally and intentionally discharged a firearm and caused great bodily injury and death to Drummond.  But only Beaudreaux was charged with personally and intentionally discharging a firearm, causing great bodily injury and death to Drummond.

A jury trial followed.  In the parlance of criminal trial practice, Crowder "flipped" just as trial began.  On the second day of the proceedings, the trial court accepted Crowder's change of plea on the murder count from not guilty to no contest to the lesser included offense of voluntary manslaughter under section 192, subdivision (a).  The court dismissed the remainder of the charges against him and proceeded against Beaudreaux alone, with Crowder among the witnesses testifying on behalf of the prosecution.

The jury was instructed in relevant part on malice murder, felony murder, and attempted robbery, including the instruction that "[t]he

3

defendant has been prosecuted for first degree murder under two theories: (1) The murder was willful, deliberate and premeditated; and (2) Felony murder." The instruction on malice murder stated: "The defendant is charged in Count 1 with murder in violation of Penal Code [section] 187. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that *caused the death of another person*. [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought." (Italics added.)

The felony-murder instruction stated: "The defendant is charged in Count 1 with murder, under a theory of felony murder. [¶] To prove that the defendant is guilty of first degree murder under this theory, the People must prove that: [¶] 1. The defendant committed attempted robbery; [¶] 2. The defendant intended to commit attempted robbery; [¶] AND [¶] 3. While committing attempted robbery, the defendant did an act that *caused the death of another person*. [¶] A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent." (Italics added.)

The jury was also instructed that, if it found Beaudreaux guilty of the crimes charged against him, it was to consider the firearm use allegations in accordance with the following guidance: "To prove that the defendant intentionally discharged a firearm, the People must prove that: [¶] 1. The defendant personally discharged a firearm during the commission of that crime; [¶] AND [¶] 2. The defendant intended to discharge the firearm. [¶] If the People have proved both 1 and 2, you must then decide whether the People also have proved that the defendant's act *caused the death of a person*." (Italics added.)

There was a jury instruction addressing Crowder's testimony, which stated as follows: "Before you may consider the testimony of Brandon

4

Crowder as evidence against the defendant regarding the crimes of murder and attempted robbery, you must decide whether Brandon Crowder was an accomplice to those crimes. A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if he or she personally committed the crime or if: [¶] 1. He or she knew of the criminal purpose of the person who committed the crime; [¶] AND [¶] 2. He or she intended to, and did in fact, aid, facilitate, promote, encourage, or instigate the commission of the crime." The instruction further stated that if the jury decides a witness is an accomplice, it could not convict based on his or her testimony alone and should view with caution any incriminating testimony by the accomplice.

In July 2009, the jury found Beaudreaux guilty of the first degree murder and attempted robbery of Drummond, and found the sentencing enhancement allegations against him to be true. The jury did not indicate whether it based its first degree murder verdict on a theory of malice murder or felony murder. But it did specifically find that he "personally and intentionally discharge[d] a firearm and caused great bodily injury and death to WAYNE DRUMMOND."

The trial court sentenced Beaudreaux to a total state prison term of 50 years to life, consisting of 25 years to life for first degree murder and 25 years to life under section 12022.53, subdivision (d).[5] On appeal, this court affirmed in *Beaudreaux I*. Our opinion there includes a lengthy summary of the facts on which the conviction is based.

---

[5] The court stayed its sentences for Beaudreaux's attempted robbery conviction and the special allegation that accompanied that count.

**B. *Beaudreaux's First and Second Resentencing Petitions***

After Senate Bill 1437 went into effect on January 1, 2019 (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*)), Beaudreaux, representing himself, filed a petition for resentencing and checked a box requesting appointment of counsel. Without appointing counsel or seeking further briefing, and based on the facts of the crime as recounted in *Beaudreaux I*, the trial court denied his petition for failure to set forth a prima facie case for relief. This court affirmed that denial by unpublished opinion in *Beaudreaux II*.

Eighteen months later, Beaudreaux, still representing himself, again petitioned for resentencing under section 1172.6. He contended under penalty of perjury that he could not have been found guilty of murder under present law and requested, based on *Lewis*, that the court appoint counsel for him based on his facially sufficient petition. The trial court denied Beaudreaux's second petition in a written order without seeking any response from the People, and also denied Beaudreaux's request for counsel. The court explained as follows:

"The instant petition appears to be similar to defendant's prior petition. Notwithstanding defendant's actual reliance on *Lewis*, *supra*, 11 Cal.5th 952 and apparent reliance on Senate Bill 775 . . . , neither authority appears to contemplate, let alone permit, giving defendants such as Beaudreaux a second or subsequent opportunity to litigate a claim that was decided against them and that decision is final. Put another way, Beaudreaux does not appear to be entitled to a second bite of the apple. [¶] For all these reasons, the [section 1172.6] petition filed on 14 March 2022 is DENIED."

Beaudreaux timely appealed.

6

## II. DISCUSSION

### A. *The Senate Bill 1437 Resentencing Scheme*

Senate Bill 1437 amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).)

Among the amendments enacted by Senate Bill 1437 was the addition of section 188, subdivision (a)(3), providing that principals must act with express or implied malice in order to be convicted of murder, with the exception of the felony-murder rule as stated in an amended section 189. (Stats. 2018, ch. 1015, § 2.) In addition, section 189, subdivision (e), as amended, states that in order to be convicted of felony murder, a defendant must be the actual killer; a person who, with the intent to kill, aided or abetted the actual killer in the commission of the murder in the first degree; or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3.)

Senate Bill 1437 also created a procedure for defendants already convicted of murder under the former law to obtain retroactive resentencing in the trial court. That procedure permits these defendants to petition for resentencing if they could not currently be convicted under the newly amended sections 188 and 189. It calls for a series of adjudication steps, starting with a determination of prima facie sufficiency under section 1172.6, subdivision (c); followed, where necessary, by an evidentiary hearing under section 1172.6 subdivision (d); and finally, where the petitioner prevails at the evidentiary hearing, by redesignation of the conviction at issue under section 1172.6, subdivision (e). (Stats. 2018, ch. 1015, § 4.)

In *People v. Duchine* (2021) 60 Cal.App.5th 798 (*Duchine*), the panel explained the prima facie determination stage of this process as follows: "[T]he time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues. Thus, absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts and had the requisite intent, the trial court should not question his evidence. The court may . . . consider the record of conviction at the prima facie stage, but may not evaluate the evidence, make credibility findings adverse to the petitioner, engage in factfinding or exercise discretion. [Citation.] The record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*Id.* at p. 815.)

## B. *Refinement of the Section 1172.6 Procedural Framework*

Beaudreaux's first resentencing petition was denied by the trial court in January 2020, and we affirmed the denial order in *Beaudreaux II*. In affirming, we rejected contentions from Beaudreaux that, at the prima facie stage of the proceedings, the trial court erred by relying on facts stated in *Beaudreaux I* and by failing to hold a hearing before summarily denying relief. The California Supreme Court granted Beaudreaux's petition for review, and ordered the appeal held in abeyance pending decision in *Lewis*. In July 2021, the Supreme Court issued its opinion in *Lewis*, and in December 2021, it dismissed Beaudreaux's petition for review without disturbing our opinion in *Beaudreaux II*. Undaunted, Beaudreaux filed another resentencing petition. The present appeal is from the summary denial of that second petition.

Beaudreaux is correct that, at least potentially, changes in the applicable law since the denial of his first resentencing petition could have

8

some bearing on this appeal.  *Lewis* focused specifically on the prima facie stage of the section 1172.6 process.  Prior to *Lewis*, one line of authority in the courts of appeal parsed out this initial stage of section 1172.6 proceedings into two separate steps and held that the prima facie sufficiency of a resentencing petition may be determined without appointing counsel, even where a petitioner requests representation.  (*Lewis*, *supra*, 11 Cal.5th at pp. 961–962.)  Resolving a split among the courts of appeal on this point, the *Lewis* court held that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient section 1172.6 resentencing petition, and also that "only *after* the appointment of counsel and the opportunity for briefing" may the prima facie determination be made.  (*Lewis,* at p. 957, original italics.)

Lewis further held, consistent with the consensus view among the courts of appeal at the time, exemplified by *Duchine*, that "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under [section 1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra,* 11 Cal.5th at p. 971.)  Expounding on this point, the *Lewis* court addressed how to deal with facts stated in prior court of appeal opinions.  It stated that "[a]ppellate opinions . . . are generally considered to be part of the record of conviction," but that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Id.* at p. 972.)

9

Shortly after *Lewis* was decided, the Legislature passed, and the Governor signed, Senate Bill 775. Among Senate Bill 775's many revisions to section 1172.6 are two that are especially pertinent here. First, Senate Bill 775 codifies the *Lewis* holding that, when a petitioner files a facially sufficient resentencing petition, counsel must be appointed upon request and briefing must be allowed before the petition may be dismissed at the prima facie stage of the proceedings. (Stats. 2021, ch. 551, §§ 1, 2.) Second, section 775 provides that, at the section 1172.6, subdivision (d)(3) evidentiary hearing to determine a petitioner's entitlement to relief, "[t]he court may . . . consider the procedural history of the case recited in any prior appellate opinion." (Stats. 2021, ch. 551, § 2.)

By referring only to the "procedural history" stated in appellate opinions, Senate Bill 775 went a step further than *Lewis* did. A number of courts of appeal have held—and we agree—that "by *allowing* consideration of ' "the procedural history" ' in a prior appellate opinion, the Legislature intended to *prohibit* consideration of 'the factual summar[y]' " in an appellate opinion. (*People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113, original italics.) This constraint applies both at the prima facie determination stage under section 1172.6, subdivision (c), and the evidentiary hearing stage under section 1172.6, subdivision (d). (*People v. Flores* (2022) 76 Cal.App.5th 974, 988 [if facts stated in appellate opinions "may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage"].)

### C. *Contentions of the Parties*

Arguing for reversal in this case, Beaudreaux asserts three errors. First, relying on *People v. Farfan* (2021) 71 Cal.App.5th 942 (*Farfan*), he argues the trial court erroneously treated his resentencing petition as a

procedurally barred "successive petition." Second, relying on *Lewis* and Senate Bill 775, he claims the trial court erred by ignoring his request for appointment of counsel and not allowing him to present briefing before entering an order of summary dismissal at the prima facie stage of the proceeding. Third, relying on Senate Bill 775, which prohibits the use of appellate factual recitals unless used for procedural background, he claims the trial court erroneously relied on substantive facts recited in *Beaudreaux I*.

Taking a slightly different tack to the prima facie insufficiency of Beaudreaux's resentencing petition than the trial court did, the People advance three contentions of their own. First, under the doctrine of issue preclusion, they claim Beaudreaux is bound by the 2009 jury findings that he personally used a firearm and inflicted great bodily harm, causing Drummond's death. Second, under the doctrine of law of the case, they claim Beaudreaux is bound by our 2020 affirmance of his first resentencing petition in *Beaudreaux II*. Third, whether or not Beaudreaux is procedurally barred, they claim any procedural error here was harmless because the record of conviction conclusively demonstrates he was Drummond's actual killer.

In evaluating these competing contentions, our standard of review is de novo. We independently review the denial of a resentencing petition at the prima facie stage, whether the denial is based on the issue preclusion doctrine (*Cheveldave v. Tri Palms Unified Owners Assn.* (2018) 27 Cal.App.5th 1202, 1218–1219), the law of the case doctrine (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1125, 1127), or, more generally, failure by the petitioner to make a prima facie showing under section 1172.6 (*People v. Harden* (2022) 81 Cal.App.5th 45, 52).

11

**D.** *Analysis*

We need not address the People's law of the case argument because we conclude their issue preclusion argument is correct, which fully resolves the appeal on harmless error grounds. We " 'review the [trial court's] ruling, not the court's reasoning, and, if the ruling was correct on any ground, we affirm.' " (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.) Here, while we agree with Beaudreaux that the trial court erred by failing to appoint counsel and by relying on substantive facts stated in *Beaudreaux I*, these procedural errors are statutory only, and thus, are governed by the usual harmless error for non-constitutional error. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Applying the *Watson* harmless error standard, we ask whether it is reasonably probable that Beaudreaux's petition would have survived summary dismissal if these procedural errors had not occurred. We think not. Beaudreaux is bound under the doctrine of issue preclusion by the jury findings that he personally and intentionally fired a weapon in the course of an attempted robbery that caused the death of Drummond. As we read those findings, the jury necessarily found Beaudreaux to be the actual killer. And because the record of conviction irrefutably defeats his allegation that he could not have been convicted of murder under current law, the court's procedural errors in failing to appoint counsel and relying on substantive facts recited in *Beaudreaux I* are harmless.

**1. Issue Preclusion**

" 'In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel.' [Citation.] 'The doctrine of collateral estoppel, or issue preclusion, is firmly embedded in both federal and California common law. It is grounded on the premise that "once an issue has been resolved in a

12

prior proceeding, there is no further factfinding function to be performed." [Citation.] "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." ' " (*People v. Curiel* (2023) 15 Cal.5th 433, 451 (*Curiel*).)

" 'As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding." ' " (*Curiel, supra,* 15 Cal.5th at p. 451.) The identical issue requirement "addresses whether 'identical *factual* allegations' are at stake in the two proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342, italics added.) " '[I]n determining whether the identity [of issues] requirement is satisfied, courts must be mindful of the need to distinguish "issues" from "legal theories." ' " (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1327.)[6]

" ' "Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and

---

[6] Issue preclusion is one branch of the broader set of preclusionary rules known as res judicata. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824.) "Although the doctrine [of res judicata] has ancient roots [citation], its contours and associated terminology have evolved over time. We now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel.' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) Both claim preclusion and issue preclusion must be distinguished from the related doctrine of law of the case preclusion, which has to do with the *legal principles* governing a particular case in subsequent proceedings following an appeal. (See *People v. Stanley* (1995) 10 Cal.4th 764, 786; 9 Witkin, Cal. Procedure (6th ed. 2023) Appeal, § 480.)

on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' [Citation.] 'The party asserting collateral estoppel bears the burden of establishing these requirements.' " (*Curiel, supra,* 15 Cal.5th at pp. 451–452; *see Lucido v. Superior Court, supra,* 51 Cal.3d at p. 341.) And " '[i]n considering whether these [five] criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.' " (*Curiel,* at p. 452.)

Beaudreaux makes no real effort to convince us that some or all of the threshold requirements for application of issue preclusion are missing here. That seems understandable. The evidentiary record of the trial is not before us, but we have the legal framework that governed the trial in the form of the jury instructions and the adjudicated results of the trial in the form of the jury's verdicts and findings. Having considered the defense Beaudreaux offered, weighed the evidence, and applied the trial court's instructions, the jury found that he "personally and intentionally discharge[d] a firearm and caused great bodily injury and death to WAYNE DRUMMOND."

As the Supreme Court has now twice pointed out, "a relevant jury finding is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' " (*Curiel, supra,* 15 Cal.5th at pp. 453–454; quoting *People v. Strong, supra,* 13 Cal.5th at p. 710.) "[I]t is difficult to foresee a situation in which a relevant jury finding, embodied in a final criminal judgment, would not meet the traditional elements of issue preclusion" in this setting. (*Curiel,* at p. 454.)

14

When we compare the underlying prosecution of Beaudreaux to the section 1172.6 proceedings, we see that the parties are the same, and the contested factual issues actually and necessarily decided within each proceeding are identical. Beaudreaux's denial of responsibility for Drummond's death put in issue his role in Drummond's killing, and he had the incentive and opportunity at trial to claim that he did not personally shoot Drummond. (See *Curiel*, *supra*, 15 Cal.5th at pp. 452–453, 459 ["Curiel contends his intent to kill was not actually litigated because his counsel did not specifically address the [finding later claimed to be binding]. But this element of issue preclusion requires only ' "the *opportunity to litigate* . . . not whether the litigant availed himself or herself of the opportunity." ' "].) We therefore conclude all the threshold requirements for application of issue preclusion have been met here.

**2. The Equitable Exception for Intervening Changes in the Law**

Rather than contest the applicability of issue preclusion as a threshold matter, Beaudreaux claims he is entitled to invoke the " 'well-settled equitable exception' " to issue preclusion for circumstances where there has been some significant change in the law since the factual findings claimed to be binding were made. (*Curiel*, *supra*, 15 Cal.5th at p. 454, quoting *Strong*, *supra*, 13 Cal. 5th at p. 716.)

For this proposition, Beaudreaux relies on *Farfan*, *supra*, 71 Cal.App.5th 942. In that case, the trial court summarily denied a first section 1172.6 resentencing petition without appointing counsel on the ground that "the jury's true finding on [a robbery murder] special circumstance allegation preclude[d] relief under section [1172.6] as a matter of law." (*Farfan*, at p. 946.) After the denial was affirmed on appeal, the Supreme Court decided *Lewis* and a split in authority among the Courts of Appeal developed, with some courts holding that prior special circumstances

15

findings are not binding at the prima facie stage of a resentencing proceeding. (*Id*. at p. 949.) Despite these interim developments in the law, the trial court summarily denied a second section 1172.6 petition, as in this case, without appointing counsel. (*Farfan*, at p. 947.)

On appeal, the People unsuccessfully attempted to defend the second summary denial by analogy to the rule against successive habeas corpus petitions. The *Farfan* court rejected the analogy, citing *In re Martinez* (2017) 3 Cal.5th 1216), a case in which the Supreme Court declined to apply the rule against successive habeas corpus petitions where there has been an interim retroactive change in the governing law. (*Farfan*, *supra*, 71 Cal.App.5th at p. 951.) According to the *Farfan* court, "not only are the changes to the law effected by Senate Bill No. 1437 themselves retroactive, but judicial interpretations of [section 1172.6] may afford a petitioner grounds for claiming eligibility for relief under the statute that were not previously available under other judicial interpretations. Here, because [appellant Farfan's] 2020 petition was based on new authority which challenged the primary ground for the superior court's summary denial of his 2019 petition" (*ibid*.)—the line of cases holding that prior special circumstances findings are binding at the prima facie stage of a resentencing proceeding—"the 2020 petition was not procedurally barred as a successive petition" (*ibid*.).

Putting to one side the analytical muddiness created by the term "successive petition" in this context,[7] we read *Farfan* as a straightforward

---

[7] In their briefs, both Beaudreaux and the People refer somewhat loosely to the bar on "successive petitions" in discussing issue preclusion, apparently borrowing the concept from *Farfan*. But the appellate panel there used this phrase to *describe* the People's unsuccessful argument for preclusion in *Farfan*. (*Farfan*, *supra*, 71 Cal.App.5th at p. 946.) We do not read its opinion to suggest that the bar against successive habeas corpus

application of *Strong*, *supra*, 13 Cal.5th at p. 703, which sided with Court of Appeal cases holding that felony-murder special-circumstances findings predating *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) are not issue preclusive in later section 1172.6 resentencing proceedings. *Banks* and *Clark* brought about a change in the governing law that undermined confidence in felony-murder special-circumstances findings made under prior law, thus warranting invocation of the equitable exception to issue preclusion for intervening changes in the law. But the *Strong* court made clear that not every change in the law will " 'result in a manifestly inequitable administration of the laws' " that warrants a departure from the ordinary rule of issue preclusion. (*Strong*, at p. 717.)

As the Supreme Court later indicated in *Curiel*, the test is whether there has been a change so significant that it would result in a different factual finding *on the issue claimed to be foreclosed* had the law as it exists

---

petitions, a rule with many complexities particular to the law of habeas corpus (see *In re Reno* (2012) 55 Cal.4th 428, 449–453; *In re Clark* (1993) 5 Cal.4th 750, 767–770; cf. *In re Friend* (2021) 11 Cal.5th 720, 728, 737 [construing a statute that codifies the bar against successive habeas petitions in capital cases]), may be equated with the doctrine of issue preclusion as it applies in section 1172.6 proceedings.

It seems to us that the potential preclusive bar facing a petitioner who brings more than one section 1172.6 petition attacking the same conviction is better analyzed under the rubric of claim preclusion, not by borrowing the prohibition on successive petitions from the law of habeas corpus. Indeed, although the trial court cited no authority and did not specify precisely what preclusionary doctrine it was applying, the gist of its order appears to be framed in terms of claim preclusion. But since no claim preclusion argument has been made on appeal, and since the narrower doctrine of issue preclusion is sufficient for affirmance on this record, we have no occasion to address whether the claim preclusion branch of res judicata has any applicability in this context.

today governed when the finding was made. (*Curiel*, *supra*, 15 Cal.5th at p. 458.) Beaudreaux points to no change in the law specific to the findings that he was armed, discharged his gun, and not only caused great bodily injury to another person, but the death of that person. Instead, he argues more generally that, "under the felony murder concepts in place when appellant was tried prior to the changes to section 189, [his] conviction was certain once the jury believed that he had been involved in the armed robbery involving Drummond." "Under those principles," he contends, "it did not matter if [Beaudreaux] was the actual shooter, or if the gun discharged accidentally while struggling for the gun with Drummond, or Drummond discharged the weapon himself while trying to get a hold of it."

We see two problems with this line of argument. First, *Curiel* squarely rejects the contention that section 1172.6 petitioners may avoid prior jury findings simply by pointing to the fact that Senate Bill 1437 retroactively changed the law of murder generally. (*Curiel*, *supra*, 15 Cal.5th at pp. 459–460. ["Curiel argues that the enactment of Senate Bill 1437 itself was such a significant and unforeseeable change in the law that it would be inequitable to apply issue preclusion to jury findings in his underlying trial. This argument is plainly foreclosed by our opinion in *Strong*."].) If such a broad-brush approach were appropriate, the equitable exception for intervening changes in the law would swallow the doctrine of issue preclusion in section 1172.6 proceedings entirely, rendering issue preclusion wholly inoperative in that context. The *Curiel* court made clear that that is an overreading of *Strong*.

Second, even assuming hypothetically that Beaudreaux could produce evidence of the accidental discharge and self-inflicted wound scenarios he posits might have occurred here, the law of felony murder has not changed in

18

a manner that would lead to a different result on those supposed facts, even if changes in the law of murder generally could be a driving consideration. We still have the longstanding rule that a defendant is guilty of felony murder if, while intending to commit a qualifying felony, he personally performs an act that causes death, regardless of whether the fatal act was intentional or accidental. That is because the mens rea from the qualifying felony supplies the requisite mens rea for murder. Senate Bill 1437 brought about a number of changes in the substantive law of murder, but not on this basic point. "*Except for felony murder,* section 188(a)(3) makes personally possessing malice aforethought a necessary element of murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 846, italics added.)

In *People v. Coefield* (1951) 37 Cal.2d 865, for example, a robber struck a store clerk in the head with his pistol to " 'knock[] him out,' " but the gun discharged, killing the man. (*Id.* at pp. 867–868.) The Supreme Court held that section 189 applies to any killing during the commission of a robbery "regardless of whether it was intentional or accidental." (*Coefield,* at p. 868.) Other examples abound. (See, e.g., *People v. Billa* (2003) 31 Cal.4th 1064, 1068 ["felony-murder rule covers 'a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident' "]; see also *People v. Washington* (1965) 62 Cal.2d 777, 781 ["inadvertent or accidental killings are first degree murders when committed by felons in the perpetration of robbery"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 152.) These felony-murder cases are still good law. Beaudreaux has pointed to nothing in the felony-murder instruction given in his case that was superseded or invalidated by Senate Bill 1437.

### 3.  The "Actual Killer" Element of Section 189, Subdivision (e)

Even where the threshold requirements for issue preclusion are met (as they are here), and even where we conclude the equitable exception to issue

19

preclusion does not apply (which is what we have concluded), that does not end our inquiry into the sufficiency of Beaudreaux's resentencing petition for purpose of section 1172.6, subdivision (c). (*Curiel*, *supra*, 15 Cal.5th at p. 463.) There is one more step to the analysis. Having "already determined that the jury's factual findings should be given preclusive effect" (*id.* at p. 470), we must still "identify what those factual findings are and how they relate to the elements of murder under a valid theory" today (*ibid*.).

Here, citing *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*), Beaudreaux's first line of argument is that the limited record of conviction before us cannot support a valid conviction of murder because of the possibility the jury found that a third person (i.e., Crowder) shot Drummond and decided to convict Beaudreaux without making the necessary finding of malice aforethought on his part. In *Offley*, the defendant was convicted as a conspirator to a gang murder under a natural and probable consequences theory (*id.* at p. 593), which was problematic because "the natural and probable consequences doctrine can no longer support a murder conviction" (*id.* at p. 595). In later section 1172.6 resentencing proceedings, the People relied on a section 12022.53, subdivision (d) jury finding that defendant Offley discharged a firearm in the course of the offense and argued that that made him liable for murder under current law. (*Offley*, at p. 598.) Unpersuaded, the Court of Appeal reversed a summary dismissal because of the possibility that the jury convicted Offley on a natural and probable consequences theory based on his mere participation in a murder, without necessarily finding he acted with the requisite mens rea. (*Id.* at p. 600.)

We doubt neither the soundness of the *Offley* court's reasoning nor Beaudreaux's legal premise in relying on it. (See *In re Ferrell* (2023) 14 Cal.5th 593, 604–608) [granting habeas corpus relief, citing *Offley*

20

favorably, and holding that a jury's section 12022.53, subdivision (d) finding did not supply the missing mens rea element necessary to cure the defect in a second degree felony-murder conviction rendered pursuant to an instruction later invalidated in *People v. Chun* (2009) 45 Cal.4th 1172].)  But the conclusion Beaudreaux draws from that premise is incorrect on the record before us.  *Offley* is inapposite because no natural and probable consequences instruction was given here.  The *Offley* court was careful to recognize this key distinction, commenting that "if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied." (*Offley*, *supra*, 48 Cal.App.5th at p. 599.)

Beaudreaux's case turns instead on whether he could be validly convicted of robbery felony murder today under section 189, subdivision (a), which in turn depends on whether his jury found he was Drummond's actual killer for purposes of section 189, subdivision (e).  We think it unavoidable that that is precisely what the record shows.  In an effort to persuade us to the contrary, Beaudreaux offers a second line of argument:  He claims a section 12022.53, subdivision (d), firearm use finding does not necessarily establish that he personally *caused* Drummond's death.  This is a variation on the *Offley* rationale, adapted to causation rather than mens rea.  Focusing here on Crowder's possible physical involvement in Drummond's demise, Beaudreaux claims it is impossible on this murky record to determine whether he was convicted of murder for committing an act that may have led indirectly to Drummond's death, but for which the jury returned a murder conviction under some causation theory short of personal commission of the murder.

21

Employing similar logic, the court in *People v. Lopez* (2022) 78 Cal.App.5th 1, 16–20 (*Lopez*) reversed a section 1172.6 summary dismissal. But that case, too, is distinguishable because of the particular jury instructions given there. The defendant in *Lopez* was convicted of first degree murder with a robbery felony-murder special-circumstances finding and sentenced to life without the possibility of parole. (*Lopez*, at p. 4.) The victim was found in his apartment naked and bludgeoned to death. (*Id.* at p. 6.) The defendant testified he had been to the victim's apartment with his "friend and drug dealer," who he implied was the actual killer. (*Id.* at p. 9.) Though the defendant admitted having been in the victim's apartment, he denied killing him or participating in any robbery or even entering the bedroom in which the body was later found. (*Ibid.*) The prosecution argued the defendant was the actual killer and committed the robbery alone, but its case for that theory was largely circumstantial. (*Id.* at p. 15.)

Against this evidentiary backdrop, the court instructed the jury on the legal concept of proximate causation as follows: " 'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.' " (*Lopez, supra,* 78 Cal.App.5th at p. 16.) The jury found the defendant guilty as charged (*id.* at p. 10), and many years later he filed a section 1172.6 resentencing petition, which was summarily denied for failure to make a prima facie case for relief (*Lopez*, at p. 11). The Court of Appeal reversed, pointing out that the jury could have believed some but not all of the defendant's testimony. (*Id.* at pp. 19–20.) In light of the proximate cause instruction, the court concluded, the jury could have believed a second assailant was in the apartment but concluded the defendant was

actively involved only in the robbery, which justified convicting him of felony murder but without any need to find he was the actual killer. (*Id.* at p. 20.)

Under the jury instructions in Beaudreaux's case, by contrast, causation was an element the jury had to find in order to convict him of murder—and it did so find—but there was no amplifying instruction permitting it to conclude that the instructional phrase "caused the death of another person" meant anything more than that Beaudreaux shot Drummond to death, in accord with the plain meaning of those words. Courts have a sua sponte duty to instruct on proximate causation, which of course has a specialized legal meaning. (*People v. Bernhardt* (1963) 222 Cal.App.2d 567, 591; Judicial Council of Cal., Crim. Jury Instns. (2012) Bench Notes to CALCRIM No. 240.) But this sua sponte duty kicks in only where the evidence justifies giving such an instruction. Here, we must assume the court understood its instructional obligations and saw no evidence to instruct on the legal meaning of causation.

Nor was there an aiding and abetting instruction allowing the jury to convict Beaudreaux as an accomplice to the conduct of Crowder. It is true that an aiding and abetting charge was indirectly given in the form of the accomplice witness instruction pertaining to Crowder's testimony. It is also true that there is a sentence in this instruction stating that a witness may be "subject to prosecution" if he either "personally committed" the charged crime or was "an accomplice to [it]." But we do not think any reasonable juror would have cherry-picked the reference to "personal" commission of a crime in an accomplice witness instruction designed to provide guidance for the evaluation of Crowder's credibility and, based on that guidance, concluded Crowder personally shot Drummond, while circuitously voting to convict Beaudreaux as an accomplice without having to consider his mental state.

23

The possibility the accomplice witness instruction may have been misread in this manner strikes us as highly improbable. By its terms, the instruction cannot reasonably be read to invite the jury to consider whether Crowder shot Drummond. Quite to the contrary, the whole point of the instruction—which is reflected in its title, "Accomplice Testimony *Must* be Corroborated: Dispute Whether Witness Is Accomplice" (italics added)—was to focus the jury on Crowder's possible liability *as an aider and abettor*, not on the possibility that he personally was a triggerman. After taking the entirety of the record of conviction into account, the dispositive consideration for us is that, while Crowder was charged as a codefendant with murder, he was never charged with discharging a gun or inflicting great bodily injury on Drummond. Only one of two originally named defendants was charged, convicted, and found to be the fatal shooter in this case, and that defendant was Beaudreaux.

Accordingly, reading all the charges, the instructions, the verdicts, and the findings as a whole, we see no legal route Beaudreaux's jury could have taken to convict him without finding he was Drummond's actual killer. As our Fourth District, Division One colleagues stated in affirming the summary denial of resentencing relief for a defendant seeking resentencing relief in similar circumstances: "Without weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury determined [the defendant] was the actual killer. The [jury's] . . . only path to convicting [the defendant] of first degree felony murder with special circumstances and a personal-infliction-of-great-bodily-injury enhancement was based on a finding she actually killed [the victim]." (*People v. Harden, supra,* 81 Cal.App.5th at p. 56.)

24

We conclude no reasonable juror who found that Beaudreaux personally discharged his gun and caused great bodily injury and death might have believed Crowder personally did the same thing, with Beaudreaux only indirectly involved in the fatal act, but liable for it nonetheless. Stated in terms framed by the pivotal legal issue here, we believe it would have been impossible on this record for a jury to have made the findings it did without finding that Beaudreaux was Drummond's actual killer. (Cf. *In re Lopez* (2023) 14 Cal.5th 562, 591–592 [harmlessness of alternative-theory error in murder verdict because of missing element in jury instructions on murder may be assessed in light of whether other jury findings made it impossible to find guilt without also finding the missing element].) As a result, the trial court's procedural errors in ordering the summary dismissal of Beaudreaux's resentencing petition at the prima facie stage of these section 1172.6 proceedings are harmless.

## III. DISPOSITION

The order dismissing Beaudreaux's second petition for section 1172.6 relief is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

25

Trial Court:   Superior Court of California, County of Alameda

Trial Judge:   Hon. Morris D. Jacobson

Counsel:       Janet J. Gray, under appointment by the Court of Appeal, for
               Defendant and Appellant.

               Rob Bonta, Attorney General, Lance E. Winters, Chief
               Assistant Attorney General, Jeffrey M. Laurence, Senior
               Assistant Attorney General, Bridget Billeter, Supervising
               Deputy Attorney General, and Masha A. Dabiza, Deputy
               Attorney General, for Plaintiff and Respondent.